UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MICHAEL J. THOMPSON, | |
| DAVID A. TROESTLER, | |
| JAMES PATRICK JOHNSON, | Case No. 07-C-1047 |
| On behalf of themselves and on behalf of all others similarly situated, | |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| v. | |
| RETIREMENT PLAN FOR EMPLOYEES OF S.C. JOHNSON & SONS, INC., | |
| RETIREMENT PLAN FOR EMPLOYEES OF JOHNSONDIVERSEY, INC., | |
| Defendants. | |

**Nature of Action**

1. This is a proposed class action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.*

**Subject Matter Jurisdiction**

2. This Court has subject matter jurisdiction over this action by virtue of 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States. Specifically, this action is brought under ERISA § 502, 29 U.S.C. § 1132.

**Personal Jurisdiction and Venue**

3. This Court has personal jurisdiction over Defendants (defined below)

because they transact business in, and have significant contacts with, this District, and because ERISA provides for nationwide service of process. *See* ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

4. Under ERISA § 502(e), 29 U.S.C. § 1132(e), an action "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." Venue here is proper for Defendants on all four bases provided by the statute. First, this is the place where the Plans (defined below) are administered. Second, this is the District where, among other places, the alleged breaches occurred. Third, the Plans "may be found" in this District in either a general or specific personal jurisdiction sense. Fourth, each Defendant "resides" here within the meaning of ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

**The Parties**

5. Plaintiff Michael J. Thompson, a resident of Racine, Wisconsin, is a former employee of S.C. Johnson & Sons, Inc. or one or more of its affiliates or former affiliates who participated in the S.C. Johnson Plan (defined below) during his period of employment (1996-2006) with that company. Mr. Thompson remains a participant, as defined in ERISA § 3(7), 29 U.S.C. §1002(7), in the S.C. Johnson Plan because although he received benefits from the S.C. Johnson Plan, it owes him additional benefits that it has not yet paid him, as set forth herein.

6. Plaintiff David A. Troestler, a resident of Racine, Wisconsin, is a former employee of S.C. Johnson & Sons, Inc. or one or more of its affiliates or former affiliates who participated in the S.C. Johnson Plan (defined below) during his period of employment (1994-2005) with that company. Mr. Troestler remains a participant, as

2

defined in ERISA § 3(7), 29 U.S.C. §1002(7), in the S.C. Johnson Plan because although he received benefits from the S.C. Johnson Plan, it owes him additional benefits that it has not yet paid him, as set forth herein.

7. Plaintiff James Patrick Johnson is a former employee of S.C. Johnson & Sons, Inc. or one or more of its affiliates or former affiliates who participated in the S.C. Johnson Plan (defined below) during his period of employment (1996-2006) with that company. Mr. Johnson remains a participant, as defined in ERISA § 3(7), 29 U.S.C. §1002(7), in the S.C. Johnson Plan because although he received benefits from the S.C. Johnson Plan, it owes him additional benefits that it has not yet paid him, as set forth herein.

8. Defendant Retirement Plan for Employees of S.C. Johnson & Sons, Inc. (the "S.C. Johnson Plan") (EIN: 39-0379990 - Plan No.: 002) is and was at all relevant times an "employee pension benefit plan," and more specifically a "defined benefit plan," within the meaning of ERISA §§ 3(2)(A) and 3(35), 29 U.S.C. §§ 1002(2)(A) and 1002(35).

9. S.C. Johnson & Sons, Inc., a domestic corporation, is the sponsor of the S.C. Johnson Plan. S.C. Johnson controls the administration of the S.C. Johnson Plan and/or has the power and duty to amend the S.C. Johnson Plan or otherwise take action, including retroactively, in order to cause the S.C. Johnson Plan to meet the tax qualification requirements of the Internal Revenue Code (the "Code") and/or conform to the requirements of ERISA. Among the ways in which S.C. Johnson controls the administration of the Plan is through its authority and exercise of authority over the S.C. Johnson Plan's designated administrator, a committee of S.C. Johnson personnel who are

appointed and supervised by S.C. Johnson and who serve at S.C. Johnson's pleasure.

10. Defendant Retirement Plan for Employees of JohnsonDiversey, Inc. (EIN: 39-1877511 - Plan No.: 002) is and was at all relevant times an "employee pension benefit plan," and more specifically a "defined benefit plan," within the meaning of ERISA §§ 3(2)(A) and 3(35), 29 U.S.C. §§ 1002(2)(A) and 1002(35).

11. The JohnsonDiversey Plan is substantially identical S.C. Johnson Plan from which the liabilities and benefit obligations for employees of S.C. Johnson Commercial Markets, Inc., a predecessor of JohnsonDiversey, Inc., were spun off in 1999. The assets of the two Plans are held by the same master trust.

12. JohnsonDiversey, Inc., a domestic corporation, is the sponsor of the JohnsonDiversey, Inc. JohnsonDiversey controls the administration of the Plan and/or has the power and duty to amend the JohnsonDiversey, Inc. or otherwise take action, including retroactively, in order to cause the JohnsonDiversey, Inc. to meet the tax qualification requirements of the Code and/or conform to the requirements of ERISA in the same ways S.C. Johnson that does with respect to the S.C. Johnson Plan.

## Additional Allegations

13. During the period of Plaintiffs' employment with S.C. Johnson & Son, Inc., Plaintiffs accrued pension benefits under the S.C. Johnson Plan. The S.C. Johnson Plan and the substantially identical JohnsonDiversey Plans are defined benefit plans of the "cash balance" variety, in which a hypothetical account is established for each participant. Additionally, participants like Plaintiffs employed by S.C. Johnson on any date from January 1, 1998 through June 1, 1998 were entitled under the Plans' "grandfather" provisions to benefits equal to the greater of the amount calculated under

the Plans' cash balance benefit and the Plans' pre-existing, "traditional" formula – a formula based on base pay and years of service, through May 31, 2008.

14. As regards the cash balance benefit, under the terms of the Plans, Plaintiffs and members of the proposed Class accrued, among other things, "Annual Service Credits" (or "pay credits") based on a percentage of their pensionable compensation and "Annual Earnings Credits" on those pay credits determined annually.

15. Under the Plan, participants accrued the right to receive future Annual Earnings Credits on their account balances through normal retirement age (age 65) at the same time as the corresponding pay credits to which the Earnings Credits relate. In technical terms, the Plan was and is, as a result, a "frontloaded" interest crediting plan within the meaning of the law. *See, e.g.,* IRS Notice 96-8, 1996-1 C.B. 359-61.

16. The Plans have consistently failed to perform the calculation, often referred to as the "whipsaw" calculation, required to ensure that participants requesting their accrued benefit in the form of lump sum prior to normal retirement age are paid an amount actuarially equivalent to the annuity promised under the Plan commencing at age 65. *See, e.g., Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 338 F.3d 755 (7th Cir. 2003). Except perhaps when a cash balance plan uses one of the "safe harbor" rates listed in IRS Notice 96-8 and/or except in some circumstances not applicable here for periods after August 17, 2006, a cash balance plan must project the balance of the participant's notational cash balance account forward to normal retirement age at a rate that reflects an unbiased estimate of the credits that would have continued to have been added to the participant's account had the participant left his or her benefit in the plan. Here, the Plans do not use a "safe harbor" crediting rate but instead a variable, above-

5

market, equity-based crediting rate.[1]

17. Had the Plans projected the hypothetical account balances of Plaintiffs and the members of the proposed Class to normal retirement age at a rate that did not understate the value of the Earnings Credits they had the right to continue receiving until age 65, their cash balance benefit expressed in the form of a lump sum would have exceeded the lump sum amount that they received (the balance of their hypothetical accounts).[2]

18. That is because while virtually all other cash balance plans base their crediting rates on the yield of a standard government bond and/or employ some form of modest fixed or minimum interest rate, the S.C. Johnson and JohnsonDiversey Plans use a crediting rate, the "Earnings Credit," that by definition will necessarily generate a significant whipsaw, however measured, every time a former employee requests and receives a lump sum distribution of his or her benefit prior to age 65, as Plaintiffs did here. Since their inception, the Plans' virtually unique Earnings Credit has frequently returned double-digits per annum. Yet the Earnings Credit does not subject participants to large losses, or periods of no or very little positive return, experienced by ordinary investors including the Plans themselves because of its guaranteed minimum of 4% per annum. Thus, the Earnings Credit has yielded participants, including Plaintiffs, a double-digit annualized rate of return since 1998.

---

[1] The JohnsonDiversey Plan purported to change its crediting rate for new pay credits accrued after December 31, 2003. Pay credits earned prior to that date were unaffected by this purported change.

[2] Thus, even if their "winning" benefit under the Plans' grandfathering, greater-of formula was the traditional benefit, Plaintiffs and other grandfathered participants are entitled to a recalculation of their benefit to ensure that the correctly calculated cash balance benefit is not indeed the true "winning" benefit.

19. Despite the fact that the S.C. Johnson and JohnsonDiversey Plans thus state an above-market variable interest crediting rate far outside the "safe harbor" rates of IRS Notice 96-8, Defendants failed to "prescribe the method for reflecting future interest credits in the calculation of an employee's accrued benefit . . . .[in a way that] preclude[s] employer discretion . . . . [and ensures that "the value of future interest credits is projected using a rate that [does not] understate[] the value of those credits." Notice 96-8, Section III A. Instead, flouting the law, Defendants simply pay participants like Plaintiffs and the members of the proposed Class the balance of their hypothetical accounts.

## Claims

20. ERISA §§ 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g), and Internal Revenue Code § 417(e), as implemented by Treasury Regulation § 1.417(e)-l(d), requires any optional form of benefit paid from a defined benefit plan, including a lump sum distribution, to be no less than the present value of the participant's accrued benefit expressed as an annuity commencing at normal retirement age (under the Plans, age 65).

21. The Plans paid Plaintiffs and members of the proposed Class lump sum benefits that were less than the present value of their respective accrued benefits in violation of ERISA §§ 203(e) and 205(g), and IRC § 417(e), as implemented by Treasury Regulation § 1.417(e)-l(d).

22. The Plans failed to project the account balances of Plaintiffs and members of the proposed Class to normal retirement age at the Plans' crediting rate or a rate that did not understate the value of the interest credits they had the right to receive through that age. The Plans thus calculated and paid Plaintiffs a benefit according to the terms of

7

the Plans that was not the actuarial equivalent of the amounts they would have received had they left their benefit in the Plans until age 65.

23. The Plans' conduct as described above also resulted in an impermissible forfeiture of benefits prohibited by ERISA § 203(a) and Internal Revenue Code § 411(a), as implemented by Treasury Regulation § 1.411(a)-4 and 4T, in that the Plans conditioned the right to receive future interest credits on Plaintiffs not taking a distribution prior to normal retirement age.

## Class Allegations

24. Plaintiffs bring suit on behalf of themselves and on behalf of all other participants and beneficiaries similarly situated under the provisions of Rule 23 of the Federal Rules of Civil Procedure with respect to violations alleged herein. Plaintiffs propose a Class defined as follows:

> All persons who received a distribution in the form of a single-sum from the Retirement Plan for Employees of S.C. Johnson & Sons, Inc. or the Retirement Plan for Employees of JohnsonDiversey, Inc. (or one of those plans differently named predecessors) (the "Plans") that equaled the amount of their notional account balance; and/or who received a distribution of benefits calculated according to the Plan's traditional formula after a comparison with their benefit calculated under the Plan's cash balance formula; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

25. The requirements for maintaining this action as a class action under Fed. R. Civ. P. 23(a)(1) are satisfied in that there are too many Class members for joinder of all of them to be practicable. There are at least hundreds of members of the proposed Class dispersed among many states.

26. The claims of the Class members raise numerous common questions of fact and law, thereby satisfying the requirements of Fed. R. Civ. P. 23(a)(2).

8

27. All issues concerning liability are common to all Class members because such issues concern their entitlement to benefits calculated in a manner other than that calculated thus far and their entitlement to relief from harm caused by the violations of law, rather than any action taken by Plaintiffs or any Class member. In addition, all issues concerning relief are also common to the Class. The computation of a participant's lump sum distribution is standardized in that the amount of the lump sum distribution for each member of the Class was calculated in the same manner as described above. Thus, there exist common questions of fact as to each member of the Class in question. Each Class member's rights will be determined by reference to the same Plan documents and the same provisions of ERISA. Thus, there exist common questions of law as to each Class member, *i.e.,* whether the method of calculating of lump sum distributions or account balances violated the law.

28. Plaintiffs' claims are typical of the claims of Class members, and therefore satisfy the requirements of Fed. R. Civ. P. 23(a)(3). They do not assert any claims relating to the Plans in addition to or different than those of the Class. Plaintiffs' claims are typical of the claims of the Class members in that their respective lump sum distributions were calculated in the same fashion as the rest of the Class, and their rights, as well as those of the Class as a whole, are similarly provided for under the plan documents and applicable provisions of ERISA.

29. Plaintiffs are adequate representatives of the proposed Class, and therefore satisfy the requirements of Fed. R. Civ. P. 23(a)(4). Plaintiffs' interests are identical to those of the proposed Class. Defendants have no unique defenses against them that would interfere with their representation of the Class. Plaintiffs have engaged competent

9
Case 2:07-cv-01047-JPS   Filed 11/27/07   Page 9 of 12   Document 1

counsel with both ERISA and class action litigation experience.

30. Additionally, all of the requirements of Fed. R. Civ. P. 23(b)(1) are satisfied in that the prosecution of separate actions by individual members of the proposed Class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Defendants and individual adjudications present a risk of adjudications which, as a practical matter, would be dispositive of the interests of other members who are not parties.

31. All of the requirements of Fed. R. Civ. P. 23(b)(2) also are satisfied in that the Plan's actions affected all Class members in the same manner making appropriate final declaratory and injunctive relief with respect to the Class as a whole.

### Additional Allegations

32. The Plans, the Plans' sponsors, the Plans' fiduciaries and the agents of some or all of them intentionally and/or negligently concealed from Plaintiffs and the proposed Class the foregoing violations and facts underlying them in an effort to avoid liability and possible threatened plan disqualification by the IRS. Defendants did so through misleading statements and omissions made to participants in a variety of contexts including in the Plans' Summary Plan Descriptions; in periodic account statements; on the website dedicated to the Plans; and in connection Plaintiffs' written applications for benefits.

33. Defendants have not denied any portion of any Plaintiff's or proposed Class member's application for benefits seeking payment of the legally required payments at issue here. Nor in any other way have Defendants repudiated or clearly repudiated any Plaintiff's or any of Class member's application for benefits seeking

payment of the legally required payments at issue here.

34. As a result of Defendants' failures to disclose and misleading statements and omissions, Plaintiffs only recently learned that they have not received the benefits to which they are lawfully entitled sought here.

35. Nevertheless, the Court should find in the exercise of its discretion that Plaintiffs were not required to exhaust such administrative remedies as were or are provided under the terms of the Plans and/or their applicable Summary Plan Descriptions for all the reasons articulated in, among other authorities, *Donaldson v. Pharmacia Pension Plan,* 435 F.Supp.2d 835 (S.D. Ill. 2006). Additionally, exhaustion should be excused because the Plans lack an ERISA-compliant claims process and/or a process capable of remedying the violations complained of without separately violating other provisions of applicable law, among other things.

## Prayer for Relief

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants and that the Court award the following relief:

A. Certification of this action as a class action for all purposes of liability and relief and appointment of undersigned counsel as class counsel pursuant to Fed. R. Civ. P. 23.

B. Judgment for Plaintiffs and the Class against Defendants on all claims expressly asserted and/or within the ambit of this Complaint.

C. An order awarding, declaring or otherwise providing Plaintiffs and the Class all other such relief to which Plaintiffs and the Class are or may be entitled whether or not specified herein.

D. An order awarding pre- and post-judgment interest.

E. An order awarding attorney's fees on the basis of the common fund doctrine (and/or other applicable law, at Plaintiffs' election), along with the reimbursement of the expenses incurred in connection with this action.

F. An order awarding, declaring or otherwise providing Plaintiffs all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that Plaintiffs may subsequently specify and/or that the Court may deem appropriate.

Dated: November 26, 2007　　　　　　　　By

　　　　　　　　/s *Eli Gottesdiener*
Eli Gottesdiener (#4045464)
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, New York 11215
Email: eli@gottesdienerlaw.com
Telephone: (718) 788-1500
Telecopier: (718) 788-1650

*Counsel for Plaintiffs and the proposed Class*