# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

MICHAEL J. THOMPSON, DAVID A. TROESTLER,
JAMES PATRICK JOHNSON, DAVID GRAY,
DAVID THOMPSON, ROBERT K. AULT,
TERRY CONLON, and MICHAEL S. WAKEFIELD,
on behalf of themselves and on behalf of
all others similarly situated,

                  Plaintiffs,

      v.                                                Case No. 07-CV-1047

RETIREMENT PLAN FOR EMPLOYEES
OF S.C. JOHNSON & SONS, INC., and
RETIREMENT PLAN FOR EMPLOYEES
OF JOHNSONDIVERSEY, INC.,

                  Defendants.

_____

# ORDER

      Plaintiffs Michael Thompson, David Troestler, and James Patrick Johnson filed a class action complaint against two defendant pension plans, the Retirement Plan for Employees of S.C. Johnson & Sons, Inc., ("SCJ Plan") and the Retirement Plan for Employees of JohnsonDiversey, Inc. ("JDI Plan," collectively "the Plans"), alleging claims pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). The defendant SCJ and JDI Plans have several motions pending before the court, including motions to dismiss the plaintiffs' amended class action complaint and a joint motion to stay discovery pending adjudication of the motions to dismiss. For the reasons set forth below, the court will deny, in part, and grant, in part, the motions to dismiss. The court will deny the motions to dismiss the amended class action complaint for failure to exhaust administrative remedies. However, the court

will grant the motions to dismiss the "interest rate ceiling" claim for lack of subject matter jurisdiction. Further, the court will deny the motions to dismiss claims of putative class members as time-barred by the federal four-year statute of limitations. Finally, the court will grant the motion to stay discovery pending adjudication of the motions to dismiss.

## BACKGROUND

The three original plaintiffs, Michael Thompson, David Troestler, and James Patrick Johnson, are former employees of S.C. Johnson & Sons, Inc. who participated in the SCJ Plan during their respective periods of employment. (Am. Compl. ¶¶ 5-7). Upon termination, the plaintiffs each chose to receive a lump-sum pension distribution from the plan. (Am. Compl. ¶ 67). On November 27, 2007, the plaintiffs filed their initial class action complaint against both the SCJ and JDI Plans. On March 3, 2008, the Plans each filed a motion to dismiss the plaintiffs' class action complaint. The JDI Plan's motion to dismiss alleged that none of the plaintiffs named in the complaint was a participant or beneficiary of the JDI Plan. (JDI Mot. Dismiss Compl. ¶ 3). In response, the plaintiffs filed an amended complaint on March 27, 2008, naming three former employees of JohnsonDiversey, Inc. who participated in the JDI Plan as additional plaintiffs. The amended complaint also added a second claim and two additional plaintiffs who are current participants in the Plans. (Am. Compl. ¶¶ 9-12). Following this amendment, the SCJ and JDI Plans each filed a motion to dismiss the plaintiffs' first amended class action complaint.

The SCJ and JDI Plans are both employee pension benefit plans of the type commonly known as "cash balance plans" and the plaintiffs assert the same two claims against each plan. (Am. Compl. ¶¶ 13, 15, 19). The Plans are substantially identical and assets of the SCJ and JDI Plans are held by the same master trust. (Am. Compl. ¶ 16). Under the Plans' terms, a hypothetical account is established and maintained for each employee who participates. (Am. Compl. ¶ 19). The employees are promised a pension benefit determined by reference to their hypothetical cash balance accounts. These accounts do not hold any actual assets, instead, they are notional accounting devices. An employee's pension benefit is based upon the amount credited to his or her notional cash balance account. The balance in the account is made up of two parts: 1) Annual Service Credits, which are based on a percentage of annual compensation; and 2) Annual Earnings Credits, which are based on a predetermined rate or formula. (Am. Compl. ¶ 20).

An Annual Earnings Credit is a single earnings credit constituting either 4% interest or 75% of the rate of return generated by the Plans' Trust for that calendar year, whichever is greater. (Am. Compl. ¶ 21). The features of the Annual Earnings Credit, a guaranteed 4% floor and a possible 75% of plan asset returns, creates an effective rate of return that cannot be found on the capital markets. (Am. Compl. ¶ 22). An employee participant who terminates his employment but does not receive his distribution until normal retirement age will continue to receive the Annual Earnings Credit on his hypothetical account. (Am. Compl. ¶ 24). However, an employee terminating employment before normal retirement age also has the option

Case 2:07-cv-01047-JPS   Filed 11/14/08   Page 3 of 23   Document 60

of taking an immediate distribution in a single lump sum.  If an employee chooses to receive a lump sum distribution, pursuant to IRS Notice 96-8, the Plans must use a "whipsaw" calculation to determine the annuity which the participant would be entitled at age 65, and then calculate the actuarial equivalent of that annuity in current dollars. (Am. Compl. ¶ 25).  Because the Plans must project the actuarial equivalent of what the employee participants are owed at normal retirement age, the amount of the lump-sum distribution an employee receives will be more than simply the amount in his notional cash balance account on the date he receives his distribution. (Am. Compl. ¶¶ 26-27).

IRS Notice 96-8 instructs cash balance plans that they must employ a "whipsaw" calculation when issuing lump sum distributions to participants who leave the plan prior to normal retirement age (generally, age 65).  The Notice specifies that the "accrued benefit" owed to a participant is the annuity projected forward to age 65 and not the notional account balance at the time of the distribution.  Therefore, if a pension plan does not employ a "whipsaw" calculation to ensure actuarial equivalence of the lump sum distribution, then the plan commits an impermissible forfeiture and the lump sum distribution it pays to the employee violates ERISA. (Am. Compl. ¶¶ 25-27).

## ANALYSIS

The plaintiffs allege two claims in their amended complaint: a "whipsaw" claim and an "interest rate ceiling" claim.  First, the plaintiffs bring a class action claim on behalf of themselves and all other similarly-situated participants and beneficiaries

who received a single-sum distribution from either the SCJ or JDI Plan prior to August 17, 2006. (Am. Compl. ¶ 67). The claim alleges that the lump-sum pension distributions received by the plaintiffs were not properly calculated under ERISA and resulted in the plaintiffs' receiving less than the present value of their respective accrued pension benefits. (Am. Compl. ¶ 61). This form of claim is commonly referred to as a "whipsaw" claim and originates from IRS Notice 96-8.

Second, the plaintiffs bring a class action claim on behalf of a class of all active participants who maintained a notional account with the SCJ or JDI Plans at any time since January 1, 2008. (Am. Compl. ¶ 68). This "interest rate ceiling" claim (referred to by plaintiffs as an "age discrimination claim") alleges that the Plans' terms provide for an interest crediting rate, the Annual Earnings Credit, that exceeds a "market rate of return" in violation of the age discrimination rules under ERISA. (Am. Compl. ¶ 66). The Plans' motions to dismiss address both the "whipsaw" and "interest rate ceiling" claims.

## A. Motions to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of a plaintiff's complaint by asserting that the plaintiff failed to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint need only provide a short and plain statement of the claim, showing that the pleader is entitled to relief and sufficient to provide the defendant with fair notice of the claim and its basis. *Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Financing Services,*

*Inc.*, 536 F.3d 663, 667 (7th Cir. 2008). A pleader must show through his allegations that he is plausibly entitled to relief, instead of merely speculatively entitled to relief. *Id.* A court appropriately dismisses an action under Rule 12(b)(6) if the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). The court construes the complaint in the light most favorable to the plaintiff, accepts as true all well-pleaded facts alleged, and draws all possible inferences in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Normally, the court cannot consider documents outside the pleadings before the district court unless the court converts the defendant's Rule 12(b)(6) motion to one for summary judgment and allows the plaintiff to submit additional evidentiary material of her own. *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). However, a defendant may introduce pertinent documents upon which the plaintiff's action is based if the plaintiff failed to do so. *Id.* These documents are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim. *Id.*

The defendants make three arguments in support of their motions to dismiss the plaintiff's amended class action complaint. The first argument attacks the "whipsaw" claim and asserts that the complaint should be dismissed because the plaintiffs failed to exhaust the administrative remedies in the respective pension plans. The second argument attacks the "interest rate ceiling" claim, asserting that the court does not have subject matter jurisdiction because the plaintiffs lack

-6-

standing and the claim is not ripe. Alternatively, the Plans argue that the "interest rate ceiling" claim should also be dismissed for failure to exhaust administrative remedies and incorporate their previous "whipsaw" argument. Lastly, the defendants argue that the claims of certain, purported class members are barred by the applicable statute of limitations and must be dismissed. The court will address each argument in turn.

### 1. Exhaustion of Plans' Administrative Remedies for the "Whipsaw" Claim

The defendant SCJ and JDI Plans urge the court to dismiss the "whipsaw" claims contained in the amended complaint because the plaintiffs failed to exhaust the Plans' administrative remedies. Specifically, the defendants assert that none of the plaintiffs who received lump-sum payments employed the SCJ or JDI Plan's mandatory administrative process to challenge the calculation of the payment amount. The SCJ and JDI Plans[1] each contain the following language:

> A Participant who disagrees with the statement or estimate of his benefits under the Plan may present a claim to the Benefits Administration Committee. The Committee has the exclusive discretion to interpret the Plan, determine eligibility for benefits and determine the amount of benefits.

(Docket #31, Attachment #3 (Ex. 2) at 15-14 "Claims Procedure"; Docket #33, Attachment #4 (Ex. C) at § 11.7). The Plans also include further detailed claims

---

[1]The court properly considers the successive versions of the SCJ and JDI Plans and Summary Plan Descriptions submitted with the defendants' motions without converting the motions to dismiss into motions for summary judgment because the plaintiffs' action is based on the Plans and the Plans are central to the plaintiffs' complaint. *Venture Assoc. Corp.*, 987 F.2d at 431.

Case 2:07-cv-01047-JPS   Filed 11/14/08   Page 7 of 23   Document 60

administration procedure. The Plans argue that this administrative procedure requires the court to dismiss plaintiffs' claims because of a strong Seventh Circuit policy in favor of exhaustion of administrative plan remedies prior to bringing an ERISA court action. The defendants further argue that requiring exhaustion of the administrative process allows plan fiduciaries to develop a complete record for judicial review. Finally, the defendants assert that the plaintiffs' claims do not fall within the narrow exceptions to the exhaustion doctrine.

In response, the plaintiffs make numerous arguments against requiring administrative exhaustion which the court liberally summarizes as follows. The plaintiffs first argue that exhaustion in an ERISA case is not mandatory, but rather, that the court should exercise its discretion not to require administrative exhaustion in the instant case because exhaustion does not protect administrative agency authority or promote efficiency. The plaintiffs also argue that exhaustion is futile because plan administrators have been on constructive notice of their miscalculations for years, thus, they would have already corrected the lump-sum distribution formula if they believed it illegally calculated benefits.

"The text of 29 U.S.C. § 1132, providing for civil actions to redress violations of ERISA, does not address whether a claimant must exhaust her administrative remedies before filing suit in federal court." *Gallegos v. Mount Sinai Medical Center*, 210 F.3d 803, 807 (7th Cir. 2000). However, the Seventh Circuit has interpreted ERISA to allow district courts to require exhaustion of administrative remedies as a prerequisite to filing a federal suit. *Powell v. A.T. & T. Communications, Inc.*, 938

F.2d 823, 826 (7th Cir. 1991). The purpose of administrative exhaustion is to minimize frivolous lawsuits, promote non-adversarial dispute resolution, decrease cost and time necessary for claim settlement, and enable the compilation of a complete record. *In re Household Int'l Tax Reduction Plan*, 441 F.3d 500, 501 (7th Cir. 2006) (citing *Gallegos v. Mt. Sinai Medical Center*, 210 F.3d 803, 808 (7th Cir. 2000).

District courts may require administrative exhaustion by parties prior to bringing an ERISA case in federal court, however, they are not compelled to do so. Despite the recognized federal policy in favor of exhaustion, the decision remains within the discretion of the district courts and will only be disturbed on appeal for "abuse of discretion." *See Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131, 138 (7th Cir.1997). In addition, there are two exceptions to the exhaustion requirement. An ERISA plaintiff need not exhaust his administrative remedies if: 1) administrative remedies are not available; or 2) pursuing those remedies would be futile. *Gallegos*, 210 F.3d at 808.

The question of whether to require administrative exhaustion falls wholly within this court's discretion, regardless of the SCJ and JDI's arguments regarding the "strong public policy" requiring dismissal of the amended complaint. The court acknowledges the Seventh Circuit preference for exhaustion of administrative remedies prior to the filing of an ERISA claim in federal court. *See e.g. Powell*, 938 F.2d at 826; *Kross v. Western Elec. Co., Inc.*, 701 F.2d 1238, 1244 (7th Cir. 1983). However, despite this preference, the district court retains complete discretion over

whether the plaintiffs must exhaust administrative remedies prior to filing suit. *Kross*, 701 F.2d at 1244. ("application of the exhaustion doctrine in ERISA cases by requiring a claimant to exhaust administrative remedies prior to bringing suit is a matter within the discretion of the trial court"); *Salus*, 104 F.3d at 138 (7th Cir. 1997) (stating that prior decisions in which courts required exhaustion "merely affirm that it is within the discretion of the district courts to require exhaustion of administrative remedies").

The court also notes that its sister court in the Western District of Wisconsin recently addressed this precise administrative exhaustion of remedies question in a nearly-identical action and held that requiring exhaustion was inappropriate. *Ruppert v. Alliant Energy Cash Balance Pension Plan*, No. 08-cv-127-bbc, 2008 WL 3915043, at *5 (W.D. Wis. Aug. 22, 2008). Like the instant case, *Ruppert* involved a proposed class action under ERISA brought by a former employee against a pension plan. *Id.* at *1. Like the instant case, the defendant was a "cash balance" pension plan from which the plaintiff received a lump-sum distribution upon termination of his employment. *Id.* at *2-3. Like the instant case, the plaintiff alleged that the pension plan did not conduct the "whipsaw" calculation required by IRS Notice 96-8 and did not pay him his full plan-accrued benefit. *Id.* at *3. Finally, like the instant case, the defendant pension plan filed a motion to dismiss the plaintiff's complaint for failure to exhaust administrative remedies under the plan's terms. *Id.* at *1.

Judge Crabb concluded that exhaustion was not required because, in the case before her, exhaustion would not advance the purposes of the policy and because administrative exhaustion was unlikely to achieve a remedy: "...it is highly questionable whether [exhaustion] would be of any use, given the plan administrators' refusal to adopt the method for calculating accrued benefits that has allegedly been mandated by the Internal Revenue Service and the courts, and that it would serve only to delay the resolution of the issues at stake." *Id.* at *1. This court agrees with Judge Crabb's reasoning and conclusion and similarly finds that requiring administrative exhaustion would be inappropriate.

The court will not require administrative exhaustion in this case because pursuing administrative remedies would be futile. Therefore, the exception to the exhaustion policy applies and plaintiffs need not exhaust administrative remedies. Requiring exhaustion for the plaintiffs' claims is futile because it is inefficient, ineffectual and fails to promote the purposes behind administrative exhaustion for ERISA claims. First, exhaustion is not a useful procedure for the class action claims asserted here. The Plans argue that the plaintiffs must first present their claims to the respective Benefits Administration Committees because Congress intended plan fiduciaries to have primary responsibility for addressing claims for benefits. For an individual plan participant, requiring exhaustion of administrative remedies prior to court action is efficient because it encourages resolution short of filing in federal court and consuming judicial resources. However, the instant claim is brought on behalf of a class alleging that the Plan terms violate ERISA. This issue "is primarily

if not exclusively a legal one" and is more appropriately addressed by the court. *Ruppert*, 2008 WL 3915043, at *7.

Further, requiring exhaustion will not trigger a determination by plan administrators that the formula employed for calculating lump sum distributions is illegal. If the administrators believed the formula to be impermissible, they would have changed it previously. IRS Notice 96-8 and salient case law[2] on the issue put the administrators on notice that failure to employ a calculation giving participants the actuarial equivalent of benefits they would have received at age 65 is a violation of ERISA. Despite this notice, the plan administrators did not alter the Plans' lump-sum distribution calculation method.

The plan administrators also have a duty to change the method for calculating lump-sum distributions if they believe it incorrectly calculates benefits. Therefore, since they did not alter the formula, they implicitly conclude that the Plans' method of calculation is not illegal. Indeed, Defendant JDI Plan appears to validate this argument by asserting that ERISA compels plan administrators to override plan language that violates the statute's requirements. (JDI Reply Br., p. 10) ("ERISA

---

[2]The case law addressing the calculation of lump-sum distributions under ERISA includes the following: *Berger v. Xerox Corp. Ret. Income Guar. Plan*, 338 F.3d 755, 761-62 (7th Cir. 2003) (affirming jury verdict that lump sum distributions paid to plan participants were not the actuarial equivalent of what they would have received had they waited until age 65, thus failing to comply with IRS Notice 96-8 and violating ERISA); *Esden v. Bank of Boston*, 229 F.3d 154, 162, 168 (2nd Cir. 2000) (reversing district court grant of summary judgment to the defendant retirement plan and holding that the defendant violated ERISA and IRS Notice 96-8 in giving plaintiff less than the actuarial equivalent of her accrued benefits); *Lyons v. Georgia-Pacific Corp. Salaried Emples. Ret. Plan,* 221 F.3d 1235, 1237-38 (11th Cir. 2000) (reversing district court's grant of summary judgment to defendant pension plan and finding that Treasury regulation requiring compliance with specified valuation rules in calculating consensual lump sum distributions before normal retirement age was valid interpretation of ERISA provision); *Berger v. Nazametz*, 157 F. Supp. 2d 998, 1008-09 (S.D. Ill. 2001) (granting summary judgment to benefit plan members and holding that members forfeited accrued benefits and received lump sum payments for less than the present value of their normal retirement benefits in violation of ERISA) .

-12-

section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), requires plan fiduciaries like the [Benefit Administration Committee] to override the terms of a pension plan if to do otherwise would violate the substantive requirements of ERISA"). As the JDI Plan correctly points out, a plan fiduciary may not discharge his duties in a manner that violates ERISA. *Laborers Nat'l Pension Fund v. Northern Trust Quantitative Advisors*, 173, F.3d 313, 322 (5th Cir. 1999). Therefore, the plan administrators had an affirmative obligation to ensure that the formula used to calculate lump sum distributions under the Plan terms complied with ERISA. The court has no reason to believe that if plaintiffs exhausted their administrative remedies, the Benefits Administration Committees would now conclude that the Plans' terms are illegal. Therefore, requiring administrative exhaustion simply delays the return of plaintiffs' claims to the federal court for resolution.

Further, requiring administrative exhaustion of remedies does not promote the purposes behind the exhaustion policy. The purposes behind exhaustion are minimizing frivolous lawsuits, promoting non-adversarial dispute resolution, decreasing cost and time necessary for claim settlement, and enabling the compilation of a complete record. *In re Household Int'l Tax Reduction Plan*, 441 F.3d at 501. First, requiring exhaustion does not "minimize frivolous lawsuits" because the plaintiffs' claims are not frivolous on their face. Second, the court is skeptical that exhaustion will result in a non-judicial resolution for the reasons discussed above. Third, because exhaustion will merely postpone the inevitable return of the lawsuit

to the federal courts, it will not decrease cost or time. Finally, an administrative record is of little use in the instant case.

The JDI and SCJ Plans argue vigorously that administrative exhaustion is not futile because of the need for development of an administrative record. They argue that a record will be useful in determining an appropriate interest crediting rate to apply to employee notional accounts, if the court ultimately determinates that the plaintiffs are owed additional pension benefits. However, the issue of whether the Plans' terms violate ERISA is primarily a legal determination. Ruppert, 2008 WL 3915042, at *7. Therefore, the court must review findings regarding an appropriate crediting rate *de novo*. Even if the court could defer to the plan administrators' findings, the persuasiveness of these findings would be questionable. If the court finds that the Plans employed an impermissible interest rate in calculating plaintiffs' lump sum distributions, why would the court defer to their proposed alternative crediting rate? Finally, the usefulness of an administrative record presupposes that the plan administrators will conclude that the formula currently used is impermissible and that they will make determinations regarding the correct rate to apply. As discussed above, the court finds this scenario highly unlikely. Therefore, as the court found in *Ruppert*, this case is "not one in which requiring exhaustion would advance the strong policies" underlying the exhaustion doctrine. 2008 WL 3915043, at *7.

The court will not require the plaintiffs to exhaust their administrative remedies because it has the discretion to do so, and because the futility exception to the policy applies in this case.

## 2. Lack of Subject Matter Jurisdiction on the "Interest Rate Ceiling" Claim[3]

As part of their amended complaint, the plaintiffs allege that the SCJ and JDI Plans violate ERISA's age discrimination rules. Effective January 1, 2008, pension plans violate ERISA if they provide interest credit which exceeds a market rate of return. ERISA § 204(b)(5)(B)(i)(I), 29 U.S.C. § 1054(b)(5)(B)(i)(I). Plaintiffs David Gray and Michael S. Wakefield are current Plan participants and allege that the SCJ and JDI Plans' interest crediting rate exceeded a market rate of return, thereby violating ERISA. (Am. Compl. ¶¶ 64-66). However, the court finds that it lacks subject matter jurisdiction and will dismiss the plaintiffs' "interest rate ceiling" claim.

The SCJ and JDI Plans argue that the court lacks subject matter jurisdiction over the claim because the plaintiffs lack Article III standing and their claim is not ripe. First, the Plans argue that the plaintiffs lack standing because they cannot demonstrate an injury in-fact. The Plans assert that the plaintiffs do not allege that the Plans' use of a rate in excess of the market rate caused an injury. In addition, the Plans argue that the plaintiffs' claim cannot constitute an injury, even if the plaintiffs had alleged such an injury. The Plans characterize  plaintiffs' claim as

---

[3]The plaintiffs refer to this claim as an "age discrimination" claim because they allege that an interest crediting rate above the market rate of return violates the applicable age discrimination rules under ERISA. (Am. Compl. ¶ 64).

Case 2:07-cv-01047-JPS   Filed 11/14/08   Page 15 of 23   Document 60

alleging that the interest crediting rate employed by the Plans is too high, resulting in a pension that is too great. The Plans assert that even if plaintiffs are correct, and the Plans are employing an above-market interest crediting rate, this benefits the plaintiffs and cannot constitute an *injury*.

Second, the Plans argue that the plaintiffs' claims are not ripe because, even though the ERISA market-rate ceiling applies in 2008, the Plans do not determine the annual interest crediting rates until the year's end. Thus, the interest crediting rate used by the Plans for 2008 will not be known until December 31, 2008, or after. Therefore, plaintiffs cannot know whether the Plans employed an interest crediting rate above the market rate before the end of the year, making the claim speculative. Further, the deadline for amending pension plans to impose the market rate ceiling is not until December 31, 2009, and the Treasury Department has not yet provided regulatory guidance on what constitutes a market rate of interest for ERISA § 204(b)(5)(B)(i)(I) purposes.

In response, the plaintiffs argue that they sufficiently allege injury to their legal right to participate in an ERISA-compliant plan and injury to their economic right to equal benefit accruals. Plaintiffs further assert that the fact that the yield of the earnings credit for 2008 will not be know until after December 31, 2008, is irrelevant because plan participants already earned the 2008 return and future return out to age 65.

A party must demonstrate standing in order to sue in federal court. *Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 756 (7th Cir. 2008). The purpose of the

standing requirement is to ensure a plaintiff's "personal stake in the outcome" to "assure that concrete adverseness which sharpens the presentation of issues." *Perry v. Sheahan*, 222 F.3d 309, 313 (7th Cir. 2000) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 75 L. Ed. 2d 675, 103 S. Ct. 1660 (1983)). To demonstrate standing, a party must establish: 1) an injury in fact that is concrete, particularized, and actual or imminent rather than conjectural or hypothetical; 2) a causal connection between the injury and the challenged conduct, such that the injury is fairly traceable to that conduct; and 3) a likelihood that the injury will be redressed by a favorable decision. *Id.* (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

In addition to standing, a claim must be ripe for adjudication by a federal court under the case-or-controversy requirement of subject matter jurisdiction. *Wis. Cent. Ltd. v. McDonald*, 539 F.3d 751, 759 (7th Cir. 2008). Ripeness does not exist when the parties only point to "hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts." *Id.* (citing *Lehn v. Holmes*, 364 F.3d 862, 867 (7th Cir. 2004)). A court will not address arguments grounded on contingent future events that may not occur, or may not occur as anticipated. *Corey H. v. Bd. of Educ. of Chi.*, 534 F.3d 683, 689 (7th Cir. 2008) (citing *Texas v. United States*, 523 U.S. 296, 300, 118 S. Ct. 1257, 140 L. Ed. 2d 406 (1998)).

The plaintiffs' claims fail under both the standing and ripeness requirements of Article III because they are neither "actual" nor "imminent." The plaintiffs assert that ERISA prohibits pension plans from using an interest credit that exceeds a

Case 2:07-cv-01047-JPS   Filed 11/14/08   Page 17 of 23   Document 60

market rate of return, and that the Plans' crediting rate exceeds a market rate of return. Plaintiffs are implicitly claiming (though they do not explicitly claim any injury) that they are injured by the Plans' use of an interest crediting rate that exceeds a market rate of return. However, use of such a rate is an advantage to plaintiffs, not an injury. If the Plans are currently employing an above-market rate as plaintiffs allege, the plaintiffs are receiving benefits at an above-market rate. The ERISA provision creates a market rate ceiling and limits what a plan would otherwise credit to a participant's account as interest. *See* ERISA § 204(b)(5)(B)(I), 29 U.S.C. § 1054(b)(5)(B)(i)[4]. Therefore, requiring plans to reduce their rate to comply with ERISA and avoid exceeding the market rate of return will deprive the plaintiffs of annual earnings they would have otherwise received. The court does not construe the receipt of pension benefits that are "too great" as a direct, concrete, particularized and actual injury.

In response to this argument, plaintiffs offer only that the Plans would not "take anything already earned away" from plan participants, but rather, would be required to "true-up" older participants to make benefits "truly equal." (Pls.' Resp. Br., p. 41). However, the Seventh Circuit does not recognize a legally cognizable injury based on distinctions in pension growth rates between older and younger workers due to younger workers having more remaining years in which to earn interest. In *Cooper*

---

[4]The statute reads in relevant part:

An applicable defined benefit plan shall be treated as failing to meet the requirements of (1)(H) unless the terms of the plan provide that any interest credit (or an equivalent amount) for any plan year shall be at a rate which is not greater than a market rate of return. 29 U.S.C. § 1054(b)(5)(B)(i)(I).

-18-

*v. IBM Personal Pension Plan*, the court rejected the argument that the "time value" of money raises an age discrimination claim stating: "Treating the time value of money as a form of discrimination is not sensible." 457 F.3d 636, 638-39 (7th Cir. 2006).

In addition, the plaintiffs' claims are speculative and hypothetical. The plaintiffs allege that the SCJ and JDI Plans' Annual Earnings Credits exceed a market rate of return in violation of ERISA. However, under the terms of the respective plans, the interest crediting rate is variable and relates to the actual calendar year return on the Plan's invested assets. (Retirement Plan for Employees of S.C. Johnson & Son., Inc., Docket #33, Ex. A § 5.3(c); Retirement Plan for Employees of JohnsonDiversey, Inc., Docket #31, Ex. 1 § 5.3(c)(2)(B)(i)). As a result, the interest crediting rate used by the Plan is not calculated until after December 31, 2008. (Retirement Plan for Employees of S.C. Johnson & Son., Inc., Docket #33, Ex. A § 5.3(c); Retirement Plan for Employees of JohnsonDiversey, Inc., Docket 31, Ex.2 § 5.3(c)). The court cannot know whether the Plans' interest crediting rate exceeds the market rate of return because the rate will not be calculated until after December 31, 2008. Despite the fact that the Plans will not calculate Annual Earnings Credits until the end of the year, the plaintiffs' claim assumes that the Plans' rate will exceed the market rate. The claim is dependent upon an event which may or may not occur, rendering it speculative and unripe. *Corey H.*, 534 F.3d at 689. At this time, the plaintiffs cannot establish that the Plans'

interest crediting rate violates ERISA, let alone establish an injury arising from the violation. Therefore, the court will dismiss the claim without prejudice.

### 3. Claims Barred by the Statute of Limitations

The SCJ and JDI Plans urge the court to dismiss without prejudice the "whipsaw" claims of putative class members who received lump sum payments more than four years before the filing of the suit as untimely under the federal catch-all statute of limitations in 28 U.S.C. § 1658(a). Alternatively, the Plans argue for dismissal of claims based on lump sum payments made more than six years before filing of the suit as untimely under the Wisconsin six-year statute of limitations governing claims for breach of contract. The plaintiffs provide a cursory response to these arguments, comprising only one paragraph of their 43-page opposition brief. In this response, the plaintiffs assert that the court cannot issue an "advisory opinion" regarding the statute of limitations prior to the class certification stage of proceedings. The plaintiffs also assert that the Plans contain no internal limitations period for filing the whipsaw claims at issue.

ERISA contains a statute of limitations for claims regarding breach of fiduciary duty, but does not contain a statute of limitations for non-fiduciary claims such as the claim at issue in this case. *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520 n.2 (3d Cir. 2007) (citing *Syed v. Hercules Inc.*, 214 F.3d 155, 158-59 (3rd Cir. 2000)). Therefore, the court must determine the appropriate statute of limitations to apply to the plaintiffs' claims under ERISA §§ 203(e) and 205(g).

-20-

However, the court will not address the statute of limitations issue in an anticipatory way. Instead, the court will adjudicate the matter of which statute of limitations applies and whether the claims of particular class members are time-barred at an appropriate juncture - when the court can make the determination based on discovery and argument from *both* parties. Therefore, the court will deny without prejudice, subject to renewal at a later time, the Plans' motions to dismiss as time-barred the claims of putative class members pursuant to the applicable statute of limitations.

**B.    Motion to Stay Discovery**

In addition to their motions to dismiss, the SCJ and JDI Plans filed a joint motion to stay discovery pending the adjudication of the motions to dismiss the amended complaint. Under Federal Rule of Civil Procedure 26(c), the court has the discretion to issue an order regarding discovery for the purpose of avoiding "oppression or undue burden or expense." Fed. R. Civ. P. 26(c)(1). In addition, under Rule 26(d), the court may order the sequence of discovery for the convenience of the parties. Fed. R. Civ. P. 26(d). On this basis, the district court has "broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Estate of Enoch v. Tienor*, No. 07-C-376, 2008 WL 410656, at *1 (E.D. Wis. Feb. 11, 2008) (quoting *Gettings v. Building Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 304 (6th Cir. 2003)). The court may appropriately limit pretrial discovery when claims may be dismissed "based on legal determinations that could not have been altered by further

discovery." *Id.* The SCJ and JDI Plans moved to dismiss all claims based on the plaintiff's failure to exhaust administrative remedies. A grant of this motion would have resulted in dismissal of the plaintiffs' amended class action complaint in its entirety. If the court had granted the defendants' motion, any discovery conducted prior to issuance of the order would constitute needless expense and a waste of attorney time and energy. Therefore, the court grants the motion to stay discovery pending the adjudication of the motions to dismiss, though issuance of this order effectively ends the period of stayed discovery.

Accordingly,

**IT IS ORDERED** that the SCJ and JDI Plans' motions to dismiss the amended class action complaint (Docket #'s 31 and 33) be and the same are hereby **GRANTED, in part, and DENIED, in part**; SCJ and JDI Plans' motions to dismiss the amended complaint for failure to exhaust administrative remedies are **denied**; SCJ and JDI Plans' motions to dismiss without prejudice the interest rate ceiling claim under ERISA § 204(b)(5)(B)(i)(I) are **granted**; and SCJ and JDI Plans' motions to dismiss without prejudice claims of putative class members' claims as time-barred are **denied**;

**IT IS FURTHER ORDERED** that the SCJ and JDI Plans' motions to dismiss the class action complaint (Docket #'s 19 and 21) be and the same are hereby **DENIED** as moot;

**IT IS FURTHER ORDERED** that the joint motion to stay discovery pending the adjudication of the motions to dismiss (Docket #45) be and the same is hereby **GRANTED**;

Dated at Milwaukee, Wisconsin, this 14th day of November, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge