# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MICHAEL J. THOMPSON, *et al.*,

    Plaintiffs,

v.                                        Case No. 07-CV-1047

RETIREMENT PLAN FOR EMPLOYEES
OF S.C. JOHNSON & SONS, INC., and
RETIREMENT PLAN FOR EMPLOYEES
OF JOHNSONDIVERSEY, INC.,

    Defendants.

---

ANTHONY J. DECUBELLIS,

    Plaintiff,

v.                                        Case No. 08-CV-0245

RETIREMENT PLAN FOR EMPLOYEES
OF JOHNSONDIVERSEY, INC.,

    Defendant.

---

# ORDER

This action arises from alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA"). The plaintiffs and putative class members are former and current participants in the Retirement Plan for Employees of S.C. Johnson & Sons, Inc., ("the SCJ Plan") and the Retirement Plan for Employees of JohnsonDiversey, Inc. ("the JDI Plan," collectively, "the Plans"). On June 2, 2009, the plaintiffs filed a Second Amended Class Action Complaint against the Plans. The Plans now jointly move for dismissal of three of the claims asserted in the

amended complaint, those alleging violations of ERISA §§ 204(b)(1), 204(g) and 204(h). Based on the reasoning set forth below, the court will grant the motion as to the § 204(g) and § 204(h) claims and will deny the motion as to the § 204(b)(1) claim.

## PROCEDURAL BACKGROUND

Three former participants in the SCJ Plan originally filed this class action suit on November 27, 2007, alleging that the Plans wrongly calculated the lump sum distributions given to retirees who elected to receive their benefit prior to the normal retirement age of 65. (*See* Docket #1). The plaintiffs filed an Amended Class Action Complaint on March 27, 2008, adding more plaintiffs and an additional claim pursuant to ERISA § 204(b)(5)(B)(i)(I) alleging that the Plans provided an interest crediting rate that illegally exceeded a market rate of return. (*See* Docket #24). The Plans filed motions to dismiss the amended complaint, which the court granted in part, and denied in part. The court denied the motion to dismiss the lump sum calculation claim for failure to exhaust administrative remedies, but granted the motion to dismiss the interest crediting rate claim without prejudice, based on a lack of standing and ripeness. (*See* Docket #60).

The plaintiffs filed a Second Amended Class Action Complaint (hereinafter "SAC" or "the complaint") on June 2, 2009. The complaint alleges new claims for violations of ERISA § 204(g) and § 204(h), as well as a claim for a violation of § 204(b)(1), but only to the extent that the Plans deny that their "interest credits" are

-2-

frontloaded. (*See* Docket #91). In response, the Plans filed the instant motion to dismiss on June 24, 2009. The motion asks the court to dismiss three of the four claims asserted in the complaint, including those for violations of § 204(g), § 204(h), and § 204(b)(1). (*See* Docket #97).

**FACTUAL BACKGROUND**

The SCJ Plan and the JDI Plan are both defined benefit plans,[1] a type of employee pension benefit plan within the meaning of ERISA. (SAC ¶¶ 23, 25). More specifically, the Plans are "cash balance" plans. (SAC ¶ 34). Under the terms of a cash balance plan, participants accrue pension benefits according to a hypothetical account balance. (*Id.*). Each participant has his or her own hypothetical account, which is also known as a notional cash balance account. These notional accounts are credited with hypothetical allocations and earnings determined under the particular plan's formula. (SAC ¶ 35).

Participants in the SCJ and JDI Plans have notional cash balance accounts and increase the balance in their respective accounts in two ways: 1) by earning Annual Service Credits ("pay credits"), based on a percentage of annual compensation; and 2) by earning Annual Earnings Credits ("interest credits"), based on a predetermined rate. (SAC ¶¶ 39-41). The Plans both define the Annual Earnings Credit in the same way. The credit is the greater of either: a) 4% interest;

---

[1] A defined benefit plan entitles its plan participants to a specified pension benefit, based primarily on wages and years of service. *Brengettsy v. LTV Steel Hourly Pension Plan*, 241 F.3d 609, 610 (7th Cir. 2001).

or b) 75% of the rate of return generated by the Plan's Trust for that year. (SAC ¶ 44; SCJ Plan § 5.3; JDI Plan § 5.3).

The SCJ and JDI Plans were not always two separate plans. Instead, the JDI Plan became an operationally and legally distinct plan on January 1, 1999. (SAC ¶¶ 31-33). Despite its creation as a separate plan, the cash balance formula used by the JDI Plan was nearly identical to that of the SCJ Plan and its assets were jointly invested with those of the SCJ Plan. (SAC ¶¶ 36-44, 62). However, this situation changed in 2003. Effective June 30, 2003, the JDI Plan's assets were transferred from the group trust to the new JDI Master Retirement Trust for Benefit Plans ("JDI Master Trust"). (SAC ¶ 62). Accordingly, the JDI Plan adopted and executed Amendment No. 2 on December 1, 2003, which altered the definition of "trust" to reflect the newly-independent JDI Master Trust. (*Id.*).

In addition to the split between the Plans, and later between the Plans' assets, changes were also made in the Plans' investment policies. In December 2002, the Joint Investment Committee for the SCJ Plan approved a reduction to equities and an increase in fixed income with the goal of "more conservative asset allocation." (SAC ¶ 60). Trustees changed the SCJ Plan's investment policy again in May 2004, when they increased the Trust's target equity allocation to 70% of the portfolio, with fixed income reduced by 5%. (SAC ¶ 63). Five months later, in October 2004, the SCJ Trustees again altered the investment policy by reducing the Trust's equity component by 10% and increasing its fixed income by 10%. (SAC ¶ 64).

The JDI Plan also experienced a change in its investment policy. In January 2005, the JDI Plan Trust approved an asset allocation that decreased equities by 6% and increased fixed income by 10%. (SAC ¶ 65). These changes in the allocation of trust assets form the basis for the plaintiffs' § 204(g) and § 204(h) claims.

**ANALYSIS**

The SCJ and JDI Plans ask this court to dismiss the plaintiffs' claims under § 208(g), § 208(h), and § 208(b)(1). The court may dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) when, after accepting all factual allegations contained in the complaint as true, the complaint fails to describe a claim that is plausible on its face. *Doss v. Clearwater Title* Co., 551 F.3d 634, 639 (7th Cir. 2008); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A plaintiff need not include detailed factual allegations for his claims to survive a motion to dismiss, however, the facts he alleges must be sufficient to raise a right to relief above the speculative level. *See Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). The court will apply this standard and address each claim in turn.

**1.     Claim under § 204(g)**

The SCJ and JDI Plans urge dismissal of the plaintiffs' § 204(g) claim and argue that the plaintiffs fail to establish either of the required claim elements, including: a) an amendment to the plan; or b) a decrease in accrued benefits. The plaintiffs allege that the Plans violated ERISA § 204(g) by altering their investment policies on a number of occasions, resulting in lower rates of return and yielding

-5-

lower "interest credits" for their notional accounts. The plaintiffs base their claim on the fact that the amount of "interest credits" applied to a plan participant's account is related to the performance of Plan Trust investments – participants' accounts are credited at a rate of either 4% or **75% of the rate of return** generated by the Plan's Trust for that year, whichever is greater. Therefore, the plaintiffs conclude, changes to investment policies that result in lower returns effectively reduce their accrued benefits, in violation of § 204(g). However, the Plans assert that changes to investment policy do not constitute plan amendments, and that the rate of return achieved on a given mix of assets does not constitute an accrued benefit.

Section 204(g), also known as the anti-cutback rule, prohibits the decrease of pension plan participants' accrued benefits through amendment of the plan. ERISA § 204(g), 29 U.S.C. § 1054(g); IRC § 411(d)(6). Traditionally, courts required a plaintiff to establish two essential elements in order to state a valid § 204(g) claim: 1) a plan amendment; and 2) a reduction in accrued benefits. *Dooley v. American Airlines*, 797 F.2d 1447, 1451 (7th Cir. 1986). The understanding of what qualifies as a "plan amendment" for § 204(g) purposes has been altered over time, however, a plaintiff must still establish an impermissible action by plan administrators which reduces accrued benefits. *See McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1119 (9th Cir. 2000). The plaintiffs fail to establish either of these required elements. Accordingly, the court finds that they fail to state a claim under § 204(g) and will grant the motion to dismiss.

### a. Amendment to Plan

The SCJ and JDI Plans argue that the plaintiffs fail to plead an amendment because changes in investment policy do not constitute formal amendments to the plan documents. An amendment to an ERISA plan must be adopted in a formal, complete, and written form before it can be implemented. *Smith v. National Credit Union Admin. Bd.*, 36 F.3d 1077, 1081 (11th Cir. 1994); *See also Schoonmaker v. Employee Sav. Plan of Amoco Corp.*, 987 F.2d 410, 413 (7th Cir. 1993) (oral representations and informal statements are insufficient to amend or contradict the present terms of an ERISA plan). This is because ERISA is meant to ensure the financial integrity of pension plans by limiting their benefits to the terms as written. *Downs v. World Color Press*, 124 F.3d 802, 805 (7th Cir. 2000). In order to implement a written modification to an ERISA plan, the plan must be "amended only pursuant to its express terms." *Id.* (citing 29 U.S.C. § 1102(a)-(b); *Brewer v. Protexall, Inc.*, 50 F.3d 453, 457 (7th Cir. 1995)).

If § 204(g) claims required a formal plan amendment, the court would find that the plaintiffs failed to plead this element. The plaintiffs' allege that the Plans violated § 204(g) by amending their respective investment policies to provide for more conservative asset allocations. (SAC ¶¶ 60, 64-65, 69-70). However, changes to investment policy statements are not formal amendments. The investment policy changes undertaken by the Plans did not alter either their plan documents or their formula for crediting benefits. The manner in which plan participants earned

"interest credits" remained the same despite changes in the mix of trust assets – participants always received credits equaling either 4% interest or 75% of the rate of return on the Trust's investments, whichever was greater. Further, the investment policy statements do not constitute formal amendments because the plaintiffs did not allege that changes to the allocation of assets were made pursuant to the express terms for amending the plans. Amendment of the Plans requires action by their respective Boards of Directors. (SCJ Plan § 14.1, DeBaker Dec., Ex. A; JDI Plan § 14.1, Blazei Dec, Ex. 1). Thus, the plaintiffs did not establish that the investment policy statements were enacted through the procedure necessary for a technical amendment.

However, § 204(g) does not only apply in situations where benefits are reduced pursuant to a formal plan amendment. The plaintiffs correctly point out that Treasury Regulation 1.411(d)-4 applies the prohibitions of § 204(g) to an "exercise of discretion," and not just a technical plan amendment. The regulation reads in relevant part:

> ... a plan that permits the employer, either directly or indirectly, through the exercise of discretion, to deny a participant a section 411(d)(6) protected benefit provided under the plan for which the participant is otherwise eligible (but for the employer's exercise of discretion) violates the requirements of section 411(d)(6).

Treas. Reg. § 1.411(d)-4, Q&A 4(a). The purpose of the regulation is to prevent pension plans from evading the reach of § 204(g) by reducing benefits without enacting formal plan amendments. Indeed, the regulation was promulgated in direct

-8-

response to a line of cases effectively allowing plan administrators to reduce benefits by using methods other than formal plan amendments. *McDaniel*, 203 F.3d at 1119. A technical plan amendment is no longer a strict requirement for pleading a § 204(g) claim and the plaintiffs' need only establish the requisite "exercise of discretion" to support its claim.

Unfortunately for the plaintiffs, they also fail to adequately plead an exercise of discretion. Altering the allocation of trust assets is not the type of exercise of discretion covered by the regulation. First, the exercise of discretion must have denied the plaintiffs a "protected benefit" under § 411(d)(6) – which the investment policy changes did not and the court will address in the following section. Second, the ability of the Plans to alter their investment policy is not comparable to the impermissible use of discretion listed in the regulation. The regulation provides the following examples of plan provisions that violate § 204(g) through the exercise of discretion: provisions allowing the plan to make a benefit "available only to those employees as the employer may designate"; provisions giving the plan "discretion to deny the availability" of a benefit; and provisions allowing the plan to make "involuntary distributions of certain amounts." Treas. Reg. § 1.411 (d)-4, Q & A 4(a). The ability of the SCJ and JDI Plan administrators to shift trust assets from equities to fixed income is not an equivalent exercise of discretion for § 204(g) purposes. These investment decisions do not change eligibility standards or apply conditions to the receipt or calculation of benefits. *See McDaniel*, 203 F.3d at 1119 (stating that

Treasury Regulation 11.411(d)-4 was meant "to prevent plans from including specific provisions that *purport* to authorize an employer to decide which employees may receive covered benefits and in what amounts."). Instead, all plan participants remained eligible for benefits and were entitled to "interest credits" under the same formula, regardless of any investment policy changes. Though altering the allocation of trust assets is an exercise of discretion, it is not the type of exercise of discretion that the regulation meant to foreclose as a method of altering benefits without formally amending the pension plan. Therefore, the plaintiffs did not adequately plead an "amendment" under § 204(g).

Finally, the plaintiffs argue that they did plead a formal amendment to the JDI Plan in their complaint. However, the fact that the plaintiffs identified an amendment unrelated to the basis of their argument does not save their § 204(g) claim. The plaintiffs point to a 2003 amendment to the JDI Plan documents changing the definition of "trust" from the "Trust established under the Trust Agreement entered into between S.C. Johnson & Son, Inc and the Trustees," to the "JohnsonDiversey, Inc. Master Retirement Trust for Defined Benefit Plans." (SAC ¶ 62). However, this amendment simply memorializes the dissolution of the group trust holding the assets of both plans and the transfer of the JDI Plan's assets to its independent trust. Modification of the "trust" definition is not the amendment or use of discretion at issue. The plaintiffs base their § 204(g) claim for a reduction of benefits on the Plans' decision to switch to a more conservative investment policy, not on the

-10-

decision to place the JDI Plan assets into a separate trust. Therefore, the fact that the plaintiffs plead an amendment to the plan documents is insufficient because it is not the "amendment" or "exercise of discretion" that allegedly lead to a reduction in their benefits. It is this "amendment" which the plaintiffs fail to establish.

### b. Reduction in Accrued Benefits

Regardless of whether investment policy statements and the changes they institute are plan amendments, the plaintiffs fail to state a claim for an independent reason. They cannot establish that changes to the allocation of trust assets constitute a reduction in accrued benefits. ERISA defines the term "accrued benefit" as "the individual's accrued benefit determined under the plan and...expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23)(A). The reduction of these accrued benefits by amendment of a pension plan gives rise to a claim for violation of § 204(g). *See* ERISA § 204(g), 29 U.S.C. § 1054(g); IRC § 411(d)(6). The SCJ and JDI Plans argue that the plaintiffs fail to state a claim because the allocation of trust assets are not accrued benefits. This court agrees. A particular percentage of assets invested in equities versus fixed income is not a protected benefit and a change to these investment percentages does not support a § 204(g) claim.

The ability to earn "interest credits" under a particular mix of investment assets is not part of the plaintiffs' accrued benefits according to Treasury Regulation

§ 1.411(d)-4. The regulation specifically precludes the court from treating particular investments as protected benefits, and states in relevant part:

> The following benefits are examples of items that are not section 411(d)(6) protected benefits:
>
> . . .
>
> (7) The right to a particular form of investment (e.g., investment in employer stock or securities or investment in certain types of securities, commercial paper, or other investment media)

Treas. Reg. § 1.411(d)-4, Q & A - 1(d). The language of the regulation clearly states that a particular allocation of trust assets is not a benefit subject to protection. The plaintiffs attempt to counter the seemingly forthright statement in the regulation by arguing that it refers to investments in a defined contribution plan, and not a defined benefit plan like the SCJ and JDI Plans. However, the only support the plaintiffs provide for this assertion is that the SCJ and JDI Plans were created a decade after the regulation was drafted, thus, the particular kind of "innovation" the Plans represent was not contemplated by the regulation's drafters. (See Pls.' Opp. Br. 25 n.22). The court does not deem the regulation inapplicable simply because the SCJ and JDI Plans were not yet in existence and their particular plan designs were not yet employed when the rule was promulgated. The regulatory language appears clear on its face and states that allocation of assets to particular forms of investment is not a protected benefit.

Further, the regulation's statement that participants do not have a protected right to a particular allocation of trust assets is the most reasonable interpretation of

-12-

"accrued benefit." The plaintiffs' argument suggests that if they do not continue receiving "interest credits" in an amount equal to 75% of the highest rate of return that *could have been* earned under any previous mix of investments, then a § 204(g) violation has occurred. However, this is problematic for several reasons. First, the plan formula for "interest credits" states that participants will be credited with 75% of the actual rate of return on trust assets, not the best possible rate of return. Second, requiring those who manage pension plan assets to maintain the most risky (and therefore, potentially most profitable) mix of investments would forever tie their hands. These managers would be unable to exercise their fiduciary duties and respond to changing market conditions; conditions which may, at times, call for a more conservative approach to the allocation of assets in order to preserve the financial integrity of the plan.

A change in investment policy does not implicate the plaintiffs' accrued benefits because they do not have a right to any particular investment policy decision or particular mix of investments. Therefore, the plaintiffs cannot establish a reduction in an accrued benefit and their § 204(g) claim fails.

**2.     Claim under § 204(h)**

The Plans also ask the court to dismiss the plaintiffs' claims under ERISA § 204(h). Section 204(h) requires a pension plan to provide notice to plan participants when an amendment to the plan will result in significant reduction in their accrued benefits. *See* 29 U.S.C. § 1054(h). The court concluded in the preceding

section that the plaintiffs failed to state a claim under § 204(g) because the investment policy changes did not constitute amendments to the Plans and because a particular allocation of plan assets is not an accrued benefit. These conclusions also doom the plaintiffs' § 204(h) claim. Section 204(h) requires notification when *accrued benefits* are reduced by an *amendment*. Since there was neither a reduction in protected benefits nor an amendment to the Plans, notification was not necessary under the statute. Therefore, the plaintiffs fail to state a claim pursuant to § 204(h).[2]

### 3. Claim under § 204(b)(1)

According to the title of their joint motion, the SCJ and JDI Plans also ask the court to dismiss the plaintiffs' claims under § 204(b)(1). (*See* Docket #97). Section § 204(b)(1) prohibits the backloading of benefits, which occurs when an employer makes benefits accrue slowly until the employee is near retirement age so that her pension rights have little value until she has completed a longer period of service. *See Jones v. UOP*, 16 F.3d 141, 144 (7th Cir. 1994). However, the Plans make no argument regarding this claim in the text of their brief. Instead, the Plans address the claim in a footnote and assert that it should be dismissed as moot because they admit that each plan is front-loaded.

---

[2]The SCJ and JDI Plans also argue that the plaintiffs' claims under § 204(g) and § 204(h) fail on the additional ground that they name the wrong defendants. The Plans maintain that the correct defendants are the plan administrators, and not the Plans themselves. The court need not address this issue, however, because it finds that the § 204(g) and § 204(h) claims fail for independent reasons.

-14-

The claim appears to be moot, given the language that appears within the plaintiffs' complaint. In alleging their § 204(b)(1) claim, the plaintiffs assert that the Plans are unlawfully backloaded "to the extent that either Defendant responds to this Complaint by denying that the Annual Earnings Credit is a frontloaded interest credit." (SAC ¶ 75). However, the Plans do not deny that their interest credits are frontloaded credits. Instead, the SCJ and JDI Plans both admit in their respective answers that they are "frontloaded" interest crediting plans. (SCJ Ans. ¶ 42; JDI Ans. ¶ 42). Thus, it seems that the § 204(b)(1) claim is moot.

However, the plaintiffs disagree. They respond by arguing that if the investment policies of the plans are not protected benefits, then the Plans are at liberty to change the asset allocations in such a way that participants can never earn more than the 4% interest floor guaranteed by the Plans' "interest credit" formula. Therefore, any "interest credits" above the 4% interest rate are impermissibly backloaded. The plaintiffs conclude that the claim should not be dismissed "at least until this matter is clarified." (Pls.' Opp. Br. 23 n.20).

The SCJ and JDI Plans appear to agree that dismissal for mootness is not appropriate. The Plans do not address the plaintiffs' argument in their reply brief, and, instead, choose to limit their request for dismissal to the § 204(g) and § 204(h) claims. (*See* Defs.' Reply Br. 17). Additionally, the court is reluctant to dismiss a claim on the basis of cursory argument conducted primarily within footnotes of the

parties' briefs. The court will reconsider this issue when it is more fully developed and appropriately addressed by the parties.

Accordingly,

**IT IS ORDERED** that the defendants' joint motion to dismiss (Docket #97) be and the same is hereby **GRANTED in part** and **DENIED in part**; the court **grants** the motion regarding the claims under **§ 204(g) and § 204(h)** and **denies** the motion regarding the claim under **§ 204(b)(1)**.

Dated at Milwaukee, Wisconsin, this 2nd day of October, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge