# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

MICHAEL J. THOMPSON, *et al.*,

            Plaintiffs,

    v.                                              Case No. 07-CV-1047

RETIREMENT PLAN FOR EMPLOYEES
OF S.C. JOHNSON & SONS, INC., and
RETIREMENT PLAN FOR EMPLOYEES
OF JOHNSONDIVERSEY, INC.,

            Defendants.

---

ANTHONY J. DECUBELLIS,

            Plaintiff,

    v.                                                Case No. 08-CV-0245

RETIREMENT PLAN FOR EMPLOYEES
OF JOHNSONDIVERSEY, INC.,

            Defendant.

---

# ORDER

Plaintiffs filed this class action lawsuit alleging that defendants Retirement Plan for Employees of S.C. Johnson & Sons, Inc., ("the SCJ Plan") and Retirement Plan for Employees of JohnsonDiversey, Inc., ("the JDI Plan," collectively, "the Plans") violated the Employee Retirement Income Security Act of 1974 (ERISA) by impermissibly "backloading" pension benefits and incorrectly calculating lump sum distributions paid to pre-retirement age plan participants. The plaintiffs have moved for certification of two classes regarding their "backloading" claim and four

subclasses pertaining to their "lump sum" claim. The court finds that the proposed classes fulfill the requirements of Federal Rule of Civil Procedure 23 and will grant certification.

## I.   PROCEDURAL BACKGROUND

Plaintiffs Michael Thompson, David Troestler, and James Patrick Johnson originally filed this class action suit against the SCJ and JDI Plans on November 27, 2007, alleging that the Plans miscalculated lump sum distributions resulting in a forfeiture of benefits for the plaintiffs. Each named plaintiff was a former participant in the SCJ Plan who chose to receive a lump sum pension distribution prior to normal retirement age of 65. The complaint did not assert that any named plaintiff had enrolled in, received a pension from, or otherwise participated in the JDI Plan. Consequently, the JDI Plan moved to dismiss the action against it. A separate but similar action was then filed against the JDI Plan on March 13, 2008, captioned *DeCubellis v. the Retirement Plan for Employees fo JohnsonDiversey, Inc.*, No. 08-CV-245. The *DeCubellis* lawsuit raised the same claim for wrongly-calculated lump sum pension distributions as the original action, but was filed by a former JohnsonDiversey, Inc., employee on behalf of a class of participants in the JDI Plan. The court later consolidated the two cases.

On March 27, 2008, the plaintiffs in the instant case filed an amended complaint naming three additional plaintiffs who had participated in the JDI Plan and two additional plaintiffs who were current participants in the Plans, as well as adding

Case 2:07-cv-01047-JPS   Filed 02/25/10   Page 2 of 22   Document 200

a claim that the Plans violated ERISA age discrimination rules.  The Plans moved for dismissal of the complaint, which the court granted in part, dismissing the age discrimination claim.  The plaintiffs subsequently filed a second amended complaint on June 2, 2009, reasserting the "lump sum" claim, adding more plaintiffs, and asserting new claims for violations of ERISA § 204(g), § 204(h), and § 204(b)(1).  The Plans subsequently moved to dismiss these new claims.  Shortly after the motion to dismiss was fully briefed, the plaintiffs filed their first motion for class certification.  One week later, on October 2, 2009, the court issued a decision granting the Plans' motion to dismiss the § 204(g) and § 204(h) claims and denying the motion to dismiss the § 204(b)(1) "backloading" claim.  The parties then filed cross-motions for summary judgment and the plaintiffs filed an amended motion for class certification.  This motion for certification of two classes and four subclasses is now before the court for decision.

## II.    FACTUAL BACKGROUND

The SCJ and JDI Plans are "cash balance" plans, a type of defined benefit pension plan whereby participants accrue pension benefits to a notional account based on annual amounts credited to that account.  The notional accounts for SCJ and JDI Plan participants are credited with Annual Earnings Credits, which are interest credits equaling the greater of 4% interest or 75% of the rate of return generated by the Plan's Trust for that year.  Plan participants are entitled to the greater of their cash balance benefit, or a "grandparent benefit" calculated under a

Case 2:07-cv-01047-JPS   Filed 02/25/10   Page 3 of 22   Document 200

pre-existing formula. Under the Plans' terms, a participant could elect to receive a lump sum distribution of their benefits equal to their notional account balance, unless the actuarial equivalent present value of their "grandfathered benefit" was greater than the notional account balance.

The Plans' interest credit and the Plans' method of calculating lump sum distributions give rise to the plaintiffs' "backloading" and "lump sum" claims. The plaintiffs allege that the Plans are impermissibly "backloaded" as to any future interest credits above the 4% minimum interest applied to a participant's account. The plaintiffs also allege that the Plans violated ERISA by giving plan participants who elected to take their benefits as a lump sum distribution an amount equal to the balance in their notional accounts. The plaintiffs assert that the Plans failed to apply a proper "whipsaw" calculation projecting the value of a participant's account forward to age 65 and then discounting it back to present value. The Plans acknowledge that they did not apply the "whipsaw" calculation when determining lump sum distributions and, as a result, participants receiving lump sum distributions may not have received the full amount of benefits to which they were entitled.

The plaintiffs now move the court to certify a number of classes and subclasses relating to their "backloading" and "lump sum" claims. They first propose an "SCJ Class" and a "JDI Class" that pertain to the "backloading" claims, described as follows:

**The SCJ Class**
All persons for whom the Retirement Plan for Employees of S.C. Johnson & Sons, Inc., (the "SCJ Plan") has ever maintained a notional account, who became vested in their Plan benefit, but who did not also participate in the Retirement Plan for Employees of JohnsonDiversey, Inc., ("JDI Plan"); and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

**The JDI Class**
All persons for whom the JDI Plan maintained a notional account prior to January 1, 2004, and who became vested in their Plan benefit; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

(Second Am. Compl., at 2). The plaintiffs also propose four subclasses that pertain to the "lump sum" claims. The "lump sum" class members are all members of either the SCJ Class or JDI Class, but are only those individuals who received a lump sum distribution before normal retirement age. The plaintiffs propose two subclasses pertaining to each plan. These subclasses divide participants into subclasses "A" and "B" based on the date that a participant received his or her lump sum payment – whether the payment was received before or after November 27, 2002. The four proposed subclasses are described as follows:

**SCJ Lump Sum Subclass A**
All SCJ Class Members who received a lump sum distribution equal to the amount of their notional account balance or the present value of their grandfathered benefit between November 27, 2002, and August 17, 2006; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

**SCJ Lump Sum Subclass B**
All SCJ Class Members who received a lump sum distribution equal to the amount of their notional account balance or the present value of their grandfathered benefit between January 1, 1998, and November

-5-

27, 2002; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

**JDI Lump Sum Subclass A**
All JDI Class Members who received a lump sum distribution equal to the amount of their notional account balance or the present value of their grandfathered benefit between November 27, 2002, and August 17, 2006; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

**JDI Lump Sum Subclass B**
All JDI Class Members who received a lump sum distribution equal to the amount of their notional account balance or the present value of their grandfathered benefit between January 1, 1998, and November 27, 2002; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

(Second Am. Compl., at 2-3). The named plaintiffs who seek to represent each respective class and subclass are participants in the SCJ or JDI Plans who either elected to receive a lump sum distribution of their benefits or currently participate in the Plans. Plaintiffs Michael Thompson, David Troestler, James Patrick Johnson, James Barberis, and David Gray are former employees of S.C. Johnson & Sons, Inc., who participated in the SCJ Plan during their employment and seek to represent "The SCJ Class." Plaintiffs David Thompson, Robert Ault, Terry Conlon, Anthony DeCubellis, Roger DeMontravel, and Michael Wakefield are former employees of S.C. Johnson & Sons, Inc., and JohnsonDiversey, Inc., who participated in the SCJ and JDI Plans during their employment and seek to represent "The JDI Class."

A number of the aforementioned plaintiffs also seek to represent the four lump sum subclasses. Plaintiffs Michael Thompson, Troestler, and Johnson each

-6-

received a lump sum distribution from the SCJ Plan prior to retirement age between November 27, 2002, and August 17, 2006, and are the proposed representatives for SCJ Lump Sum Subclass A. Plaintiff Barberis received a lump sum distribution from the SCJ Plan between January 1, 1998, and November 27, 2002, and is the proposed representative for SCJ Lump Sum Subclass B. Plaintiffs David Thompson, Ault, Conlon and DeCubellis each received a lump sum distribution from the JDI Plan between November 27, 2002, and August 17, 2006, and constitute the proposed representatives for JDI Lump Sum Subclass A. Finally, plaintiff DeMontravel received a lump sum distribution from the JDI Plan between January 1, 1998, and November 27, 2002, and is the proposed representative for JDI Lump Sum Subclass B.

## III.    TIMING OF THE DECISION ON CLASS CERTIFICATION

The Plans do not make arguments directly opposing the merits of the motion for class certification under Federal Rule of Civil Procedure 23. Instead, they argue that the court should not address the question of class certification until after it decides the pending motions for summary judgment. The Plans justify this order of events by asserting that the issue of class certification may be mooted if the court grants them summary judgment on the plaintiffs' claims.

This conclusion of mootness, however, is called into question by the Seventh Circuit Court of Appeals' holding in *Wiesmueller v. Kosobucki*. 513 F.3d 784, 787 (7th Cir. 2008). The Seventh Circuit held that a district court's ruling on the merits

Case 2:07-cv-01047-JPS   Filed 02/25/10   Page 7 of 22   Document 200

of a suit did not moot a pending motion for class certification. *Id.* at 787. The court reasoned that an unfavorable ruling on the merits of a claim does not moot class certification because the decision may be appealed and reversed, and because a judgment against a certified class has preclusive effect against all class members, and not just the class representatives. *Id.* ("[A] district judge does not have the last word on the merits of a plaintiff's claim. The fact that he thinks it unsound doesn't mean that a class action by the plaintiff is doomed to failure. Moreover, the fact that a suit lacks merit does not "moot" the question of class certification...since if a class is certified, its members (unless they opt out of the class), and not just the named plaintiff, are bound by the judgment.").

Further, deciding a motion for class certification prior to deciding a case on the merits is generally advisable. The Seventh Circuit suggested as much when it pointed out that the district court "could have decided the motion for class certification, applying the criteria in Fed. R. Civ. P. 23, before deciding the case on the merits." *Wiesmueller*, 513 F.3d at 787. Federal Rule of Civil Procedure 23 directs the court to determine whether certification of a class is appropriate at "an early practicable time." Fed. R. Civ. P. 23(c)(1). Thus, deciding a summary judgment motion before deciding a pending motion for class certification may contravene the command of Rule 23. *See Bennett v. Tucker*, 827 F.2d 63, 67 (7th Cir. 1987). A district court is not prohibited from ever deciding the merits of a case before addressing class certification, but doing so is only appropriate on rare

occasions involving "exceptional" cases. *See Wiesmueller*, 513 F.3d at 787. This is not such a case and the court will address the motion for class certification prior to resolving the cross-motions for summary judgment.

## IV.   MERITS OF THE CLASS CERTIFICATION MOTION

Federal Rule of Civil Procedure 23 governs the certification of class action lawsuits and requires a two-step analysis. First, the court must determine whether the plaintiff satisfies four prerequisites established in Rule 23(a), including: 1) numerosity; 2) commonality; 3) typicality; and 4) adequacy of representation. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *see also* Fed. R. Civ. P. 23. Failure to meet any of the prerequisites of the rule precludes class certification. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). Second, the court must determine if the plaintiff satisfies one of the conditions of Rule 23(b). *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977).

### A.   Numerosity

Rule 23 requires a proposed class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In determining whether joinder is impractical, the court considers the potential size of the class, as well as other considerations such as the type of relief sought and the "practicality of relitigating the central issues of the controversy." *Quiroz v. Revenue Production Management, Inc.*, 252 F.R.D. 438, 441 (N.D. Ill. 2008). The plaintiffs assert that the SCJ and JDI classes each include more than 2,000 members and that the lump sum subclasses

Case 2:07-cv-01047-JPS   Filed 02/25/10   Page 9 of 22   Document 200

each contain 75 members or more. The Plans do not dispute these numbers. Therefore, the court is satisfied that the proposed classes and subclasses have the required numerosity.

### B. Commonality

Rule 23 also requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is generally satisfied by a common nucleus of operative fact. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). A common nucleus of fact manifests where the defendant has engaged in standardized conduct towards putative class members. *See id.* The plaintiffs easily satisfy this requirement because they raise two common issues: 1) whether the Plans' Annual Earnings Credits applying interest above the 4% minimum renders them impermissibly backloaded; and 2) whether the Plans underpaid lump sum benefits by failing to apply a "whipsaw" calculation. Thus, there are common questions of law and fact underlying the class members' claims.

### C. Typicality

Typicality for Rule 23 purposes exists when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This occurs when a plaintiff's claim arises from the "same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Here, typicality exists because the claims of all

named plaintiffs and putative class members arise from the Plans' formula for interest credits and from the Plans' methods of calculating lump sum payments. The interest credits and lump sum calculation methodology were applied to the accounts of the proposed class representatives and class members in the same manner. As a result, the typicality requirement is met.

### D. Adequacy

Rule 23 further requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To establish adequacy of the class representatives, the court considers whether the plaintiff's attorney is qualified, experienced and generally able to conduct the proposed litigation. *Susman v. Lincoln American Corp.*, 561 F.2d 86, 90 (7th Cir. 1977). The court also considers whether the plaintiff has interests antagonistic to those of the class. *Id.* "Antagonistic or conflicting claims" between class members preclude fair and adequate representation by the class representatives. *Rosario*, 963 F.2d at 1018.

The Plans make no objection to the qualifications of plaintiffs' counsel to represent the interests of the class. Counsel has considerable experience litigating class action cases involving ERISA pension benefits and was approved by Judge Crabb in the Western District of Wisconsin in a case alleging similar claims. *See Ruppert v. Alliant Energy Cash Balance Pension Plan*, 255 F.R.D. 628, 636 (W.D. Wis. 2009).

-11-

The Plans do briefly argue that the interests of certain class representatives may conflict with the interests of certain lump sum subclass members. In their motion for summary judgment, the plaintiffs urge the court to order the Plans to apply a flat rate of 8.95% in performing a "whipsaw" calculation to determine the amount that the subclass members were underpaid when they received their lump sum distributions prior to age 65. The plaintiffs alternatively assert that the court should consider using the actual interest rate for the year when a given participant's lump sum distribution was calculated – which was higher than 8.95% in certain years.

The Plans argue that the issue of which interest crediting rate should be applied to recalculate the participants' lump sum benefits creates a conflict between class members. They argue that applying an 8.95% interest rate will advantage some class members because it is a higher rate than the actual interest rate for the year in which those members received a lump sum distribution. However, applying an 8.95% interest rate will disadvantage class members who received a lump sum distribution in a year where the actual rate was higher than 8.95%.

The court does not believe that this issue creates conflicting claims precluding class certification. The putative class members all claim that the Plans failed to conduct a proper "whipsaw" calculation, resulting in lump sum payments equaling less than the actuarial equivalent of their accrued benefits. Any antagonistic interests relate only to the method of rectifying an underpayment of benefits. Further, the arguments posited within the parties' summary judgment motions

-12-

regarding which rate should be applied in recalculating lump sum distributions are not at issue here. Therefore, the proposed representatives can adequately represent the class and the requirements of Rule 23(a) are fulfilled.

### E.    Conditions under Rule 23(b)

After meeting the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), a plaintiff must establish that a class action can be "maintained" under one of the subsections of Rule 23(b). The plaintiffs argue that the classes are certifiable under Rule 23(b)(1)(A), 23(b)(1)(B), or 23(b)(2). The Plans make no argument on the issue and state only that any appropriate class should be certified under Rule 23(b)(2). This court agrees.

Certification under Rule 23(b)(2) is warranted when the "party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Seventh Circuit endorsed certification for "lump sum" claims under this section in *Berger v. Xerox Corporation Retirement Income Guarantee Plan,* 338 F.3d 755 (7th Cir. 2003). The Seventh Circuit found Rule 23(b)(2) certification appropriate because the relief sought by the plaintiffs was a declaration that the plan's method of calculating lump sum payments was illegal. *Id.* at 763-64. The reasoning also applies to the instant case. The plaintiffs seek declaratory relief stating that the Plans' method of calculating lump sums is illegal. The plaintiffs also seek declaratory relief stating that the Plans'

interest credit violates ERISA anti-excessive "backloading" rules. Therefore, the class is maintainable under Rule 23(b)(2). The court need not also consider whether the class is maintainable under Rule 23(b)(1) or Rule 23(b)(3) because classes certified under Rule 23(b)(1) and 23(b)(2) are identical for notice and opt out purposes, and because allowing members to opt out under Rule(b)(3) is counterproductive. *Ruppert*, F.R.D. at 637.

## V. SCOPE OF THE CLASSES AND SUBCLASSES

The final determination for the court is whether the precise outlines of the classes and subclasses proposed by the plaintiffs are appropriate. The Plans raise this general issue by arguing that the certification of four lump sum subclasses is unnecessary. The Plans assert that the lump sum subclasses should be limited to participants receiving lump sum distributions within the applicable statute of limitations period of either four or six years.[1] As the Plans point out, the "B" Lump Sum Subclasses include plan participants who received lump sum distributions more than six years prior to the filing of the lawsuit. However, the proposed subclasses address this concern. The prospect that the court will apply a six-year limitations period to the participants' claims presumably lead the plaintiffs to propose separate subclasses for participants who received lump sum payments prior to November 27,

---

[1]The Plans argue in their summary judgment motion that a four-year statute of limitations applies, or alternatively, that a six-year statute of limitations applies, rendering the claims of certain class members time-barred. The plaintiffs argue that the class members' claims are not time-barred because the members did not receive notice that they had been injured outside the statute of limitations period. However, the issue of which statute of limitations period applies and when it began to run is argued in the summary judgment briefings and the court will address it when deciding the cross-motions for summary judgment.

2002, and those receiving lump sum payments afterwards. Therefore, if the court applies a six-year statute of limitations, the court can rule against the Lump Sum Subclass B class members and leave the claims of the Lump Sum Subclass A members intact. Thus, certification of two lump sum subclasses for each Plan is permissible and appropriate here.[2]

The court notes that it will begin with a presumption that the plaintiffs meant to separate their subclasses based on lump sum distributions received more than six years before the filing of the lawsuit and those received less than six years prior. The subclasses, as currently proposed, divide class members based on whether they received a lump sum distribution before or after November 27, **2002**. However, the court believes that the plaintiffs intended to divide class members based on whether they received a lump sum distribution before or after November 27, **2001**. The plaintiffs filed their original complaint on November 27, 2007. Therefore, application of a six-year statute of limitations would prohibit claims filed prior to

---

[2]Judge Crabb came to the same conclusion in *Ruppert* when she certified two separate classes dividing participants based on the date of their lump sum distributions. *See Ruppert*, 255 F.R.D. at 634 ("I am persuaded that plaintiffs' proposed subclasses properly divide the class to address defendant's statute of limitations concerns.").

November 27, 2001. The court will accordingly alter the dividing date between the proposed lump sum subclasses by one year.[3]

The Plans raise several additional, minor arguments regarding the proposed lump sum subclasses. First, the Plans argue that the JDI lump sum subclasses should not be distinguished based on the filing date of the original action, but on the filing date of the *DeCubellis* case, because none of the original plaintiffs had standing to allege injury against the JDI Plan. Next, the Plans argue that one of the named plaintiffs is not a proper class representative because he waived his right to assert an ERISA claim. Finally, the Plans object to inclusion of beneficiaries within the proposed class definitions.

## A. Applicable Date for Distinguishing the JDI Subclasses

The Plans argue that the JDI lump sum subclasses should be constructed based on the March 13, 2008 filing date of the *DeCubellis* case, rather than the filing date of the initial action. The original plaintiffs filed their lawsuit on November 27, 2007, naming both the SCJ and JDI Plans as defendants. However, the initial complaint only asserted injuries caused by the SCJ Plan because the three named plaintiffs participated in and received pensions from the SCJ Plan, but made no such

---

[3]The plaintiffs' use of the year 2002 appears to be an oversight. Plaintiffs' counsel in this case also represents the plaintiffs in the *Ruppert* case and proposed similar lump sum classes in that case. However, in *Ruppert*, the proposed lump sum classes were distinguished based on whether filing occurred more than six years prior to the date the lawsuit was filed. (*See Ruppert*, 255 F.R.D. at 633; *Ruppert v. Alliant Energy*, 08-CV-127, Dk #1). The court believes that the plaintiffs intended to distinguish the lump sum classes in the instant case in a similar manner, instead of distinguishing between plaintiffs who received their lump sum payments more than five years prior to the date the lawsuit was filed and those receiving payments less than five years prior.

Case 2:07-cv-01047-JPS   Filed 02/25/10   Page 16 of 22   Document 200

assertions regarding the JDI Plan.  Therefore, the Plans conclude, none of the named plaintiffs had standing to bring suit against the JDI Plan until the filing of the *DeCubellis* suit, which was later consolidated with the first action.  The plaintiffs make no response to this argument.

The court agrees that the plaintiffs lacked standing to bring suit against the JDI Plan prior to the March 13, 2002, filing of the *DeCubellis* case.  The plaintiffs named in the original complaint were former employees of  SC Johnson & Sons, Inc. who participated in the SCJ Plan.  The complaint did not assert that they were employed by JohnsonDiversey, Inc., that they participated in the JDI Plan, or that they had any relationship with the JDI Plan.  Therefore, the named plaintiffs could claim no injury caused by the JDI Plan's actions and had no standing to sue the plan. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (standing requires a "causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant").  This is true despite the class action nature of the complaint.  A named plaintiff in a class action suit cannot acquire standing by bringing his action on behalf of others who suffered an injury that he does not share. *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (quoting *Allee v. Medrano*, 416 U.S. 802, 828-29 (1974)). The plaintiffs named in the original complaint cannot have suffered injury as a result of the JDI Plan's actions and cannot represent others who may have suffered such an injury.  Therefore, the filing of the original complaint did not toll any applicable statute of limitations on

these claims against the JDI Plan. A plaintiff with standing did not file claims against the JDI Plan until March 13, 2008. Consequently, the court will alter the proposed JDI Lump Sum Subclasses to distinguish between those lump sum subclass members who received lump sum distributions more than six years prior to March 13, 2008, and those who received their distributions less than six years prior to that date.

### B. Robert Ault's Ability to Serve as a Class Representative

The Plans also argue that plaintiff Robert Ault cannot serve as a class representative because he waived his right to bring any ERISA claim as a result of a settlement agreement he signed on November 12, 2004. However, a plan participant cannot waive his right to a nonforfeitable vested pension benefit unless that waiver is made in the context of a contested pension benefit claim. *See Lynn v. CSX Transportation, Inc.*, 84 F.3d 970, 975-76 (7th Cir. 1996). Ault's claim for an underpayment of his lump sum benefits was only a "contested claim" at the time he signed a settlement agreement if "the claimant knew of the claim at the time [the] dispute was settled." *Id.* at 975. However, the Plans do not present evidence to suggest that the calculation of Ault's lump sum distribution was "one of the issues on the bargaining table" when he signed the release in question. Therefore, he did not waive his right to claim forfeited benefits. *See id.* at 976. Further, the settlement agreement and release was executed between Ault and JohnsonDiversey, Inc., and

-18-

not between Ault and the JDI Plan. The court will include Ault as a named representative in this suit.

### C. Inclusion of Beneficiaries within the Class Definitions

Finally, the Plans object to the inclusion of "beneficiaries" within the proposed classes and subclasses. The Plans argue that including beneficiaries within the class definitions is unwarranted because class members' beneficiaries will receive any damages awarded in this case through the plan participant's estate. The Plans point out that the plaintiffs proposed similar classes including beneficiaries in *Ruppert* and Judge Crabb narrowed the classes to exclude the beneficiary language. 255 F.R.D. at 637. This court will also eliminate the reference to beneficiaries. The inclusion of beneficiaries within the proposed lump sum subclass definitions is unnecessary and the plaintiffs make no argument suggesting otherwise.

Accordingly,

**IT IS ORDERED** that the plaintiffs' amended motion to certify and appoint counsel (Docket #144) be and the same is hereby **GRANTED**. The following plaintiff classes and subclasses be and the same are hereby **CERTIFIED**:

> **The SCJ Class**
> All persons for whom the Retirement Plan for Employees of S.C. Johnson & Sons, Inc., has ever maintained a notional account, who became vested in their Plan benefit, but who did not also participate in the Retirement Plan for Employees of JohnsonDiversey, Inc.; and the estates of such persons and alternate payees under a Qualified Domestic Relations Order.

-19-

**The JDI Class**
All persons for whom the JDI Plan maintained a notional account prior to January 1, 2004, and who became vested in their Plan benefit; and the estates of such persons and alternate payees under a Qualified Domestic Relations Order.

**SCJ Lump Sum Subclass A**
All persons for whom the Retirement Plan for Employees of S.C. Johnson & Sons, Inc., has ever maintained a notional account, who became vested in their Plan benefit, but who did not also participate in the Retirement Plan for Employees of JohnsonDiversey, Inc., who received a lump sum distribution equal to the amount of their notional account balance or the present value of their grandfathered benefit between November 27, 2001, and August 17, 2006; and the estates of such persons and alternate payees under a Qualified Domestic Relations Order.

**SCJ Lump Sum Subclass B**
All persons for whom the Retirement Plan for Employees of S.C. Johnson & Sons, Inc., has ever maintained a notional account, who became vested in their Plan benefit, but who did not also participate in the Retirement Plan for Employees of JohnsonDiversey, Inc., who received a lump sum distribution equal to the amount of their notional account balance or the present value of their grandfathered benefit between January 1, 1998, and November 27, 2001; and the estates of such persons and alternate payees under a Qualified Domestic Relations Order.

**JDI Lump Sum Subclass A**
All persons for whom the Retirement Plan for Employees of JohnsonDiversey, Inc., has maintained a notional account, who became vested in their Plan benefit, and who received a lump sum distribution equal to the amount of their notional account balance or the present value of their grandfathered benefit between March 13, 2002, and August 17, 2006; and the estates of such persons and alternate payees under a Qualified Domestic Relations Order.

**JDI Lump Sum Subclass B**
All persons for whom the Retirement Plan for Employees of
JohnsonDiversey, Inc., has maintained a notional account, who
became vested in their Plan benefit, and who received a lump sum
distribution equal to the amount of their notional account balance or the
present value of their grandfathered benefit between January 1, 1998,
and March 13, 2002; and the estates of such persons and alternate
payees under a Qualified Domestic Relations Order.

**IT IS FURTHER ORDERED** that the following plaintiffs shall serve as named

class representatives:

**SCJ Class**:
Michael J. Thompson, David A. Troestler, James Patrick Johnson,
James D. Barberis and David Gray

**JDI Class**:
David Thompson, Robert K. Ault, Terry Conlon, Anthony J. DeCubellis,
Roger C. DeMontravel and Michael S. Wakefield

**SCJ Lump Sum Subclass A**:
Michael J. Thompson, David A. Troestler and James Patrick Johnson

**SCJ Lump Sum Subclass B**:
James D. Barberis

**JDI Lump Sum Subclass A**:
David Thompson, Robert K. Ault, Terry Conlon and Anthony J.
DeCubellis

**JDI Lump Sum Subclass B**:
Roger C. Montravel

**IT IS FURTHER ORDERED** that Eli Gottesdiener, Esq., of Gottesdiener Law

Firm, PLLC, is **APPOINTED** as class counsel for all classes and subclasses

pursuant to Federal Rule of Civil Procedure 23(g);

**IT IS FURTHER ORDERED** that the plaintiffs' motion to certify class (Docket #118) be and the same is hereby **DENIED as moot**.

Dated at Milwaukee, Wisconsin, this 25th day of February, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge