# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

MICHAEL J. THOMPSON, *et al.*,

        Plaintiffs,

    v.                                     Case No. 07-CV-1047

RETIREMENT PLAN FOR EMPLOYEES
OF S.C. JOHNSON & SONS, INC., and
RETIREMENT PLAN FOR EMPLOYEES
OF JOHNSONDIVERSEY, INC.,

        Defendants.

---

ANTHONY J. DECUBELLIS,

        Plaintiff,

    v.                                     Case No. 08-CV-0245

RETIREMENT PLAN FOR EMPLOYEES
OF JOHNSONDIVERSEY, INC.,

        Defendant.

---

# ORDER

Plaintiffs are former and current participants in the Retirement Plan for Employees of S.C. Johnson & Sons, Inc., ("the SCJ Plan") and the Retirement Plan for Employees of JohnsonDiversey, Inc. ("the JDI Plan," collectively, "the Plans") and bring this suit alleging that the Plans violated the Employee Retirement Income Security Act of 1974 (ERISA). The plaintiffs assert two claims: 1) a "backloading" claim, alleging that the Plans impermissibly backloaded pension benefits; and 2) a "lump sum" claim, alleging that the Plans incorrectly calculated lump sum

distributions paid to pre-retirement age plan participants by failing to apply a "whipsaw"[1] calculation. The court granted the plaintiffs' motion for class certification and certified two general classes related to the "backloading" claim and four subclasses related to the "lump sum" claim. The parties have filed cross-motions for summary judgment on both claims which are fully briefed and ready for decision.

The Plans argue that the "backloading" claim is moot because they admit that they are "frontloaded" interest crediting plans. The plaintiffs disagree and argue that the Plans are both "backloaded" and "frontloaded."[2] The court will grant summary judgment to the Plans on this claim, for the reasons discussed below.

The parties agree that the Plans are liable on the "lump sum" claim, but disagree about whether the plaintiffs' claims are time-barred and about how lump sum distributions should be recalculated. The Plans admit that they did not properly apply a "whipsaw" calculation when determining lump sum payments and acknowledge that, as a result, the plaintiffs who chose to receive a pre-retirement

---

[1] A "whipsaw" calculation refers to the method of calculating the actuarial equivalence of the annuity a plan participant in a cash balance plan (like the SCJ and JDI Plans) would have received if he had waited until normal retirement age to receive his benefits, rather than taking a lump sum disbursement prior to retirement age. The "whipsaw" calculation first projects a participant's hypothetical account balance forward to retirement age at the plan's future interest crediting rate, and then discounts the balance back to its present value. *See Esden v. Bank of Boston*, 229 F.3d 154, 159 (2d Cir. 2000); *Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 338 F.3d 755, 760 (7th Cir. 2003).

[2] The terms "frontloaded" and "backloaded" refer to the manner in which a cash balance plan compounds interest credit. "Backloading" occurs when a plan participant receives disproportionately higher benefit accruals for later years of service. *See Langman v. Laub*, 328 F.3d 68, 71 (2d Cir. 2003). "Frontloading" occurs when a plan participant accrues interest credits at the same time as he accrues pay credits and the credits are not conditioned on future employment. *See Hirt v. Equitable Retirement Plan for Employees, Managers, and Agents*, 441 F. Supp. 2d 516, 551 n.12 (S.D.N.Y. 2006).

Case 2:07-cv-01047-JPS   Filed 03/26/10   Page 2 of 30   Document 203

lump sum distribution may not have received the full amounts to which they were otherwise entitled. However, the Plans argue that this fact is irrelevant because the plaintiffs' claims are untimely under the applicable statute of limitations. The court finds that the "lump sum" claims of certain plaintiffs are time-barred and grants summary judgment to the Plans on the claims of the SCJ Lump Sum Subclass B and the JDI Lump Sum Subclass B plaintiffs. However, the court will deny summary judgment to both parties regarding their proposed interest crediting rates and will order the Plans to recalculate the plaintiffs' lump sum distributions in accordance with the law.

## BACKGROUND

### A.    The SCJ and JDI Plans

The defendants in this action are pension plans that provide benefits for the employees of S.C. Johnson & Sons, Inc. ("SC Johnson") and JohnsonDiversey, Inc. ("JohnsonDiversey"). The SCJ and JDI Plans are "cash balance" plans, a type of defined benefit pension plan. The SCJ Plan has existed for many years as a defined benefit plan, but was amended to include a cash balance formula effective June 1, 1998. The JDI Plan, however, did not previously exist and employees of the spin-off company now named JohnsonDiversey were previously included in the SCJ Plan. Effective December 31, 1998, the employees of JohnsonDiversey's predecessor, S.C. Johnson Commercial Markets, Inc., were subdivided from the SCJ Plan and

Case 2:07-cv-01047-JPS   Filed 03/26/10   Page 3 of 30   Document 203

became participants in a new Retirement Plan for Employees of S.C. Johnson Commercial Markets, Inc., which later became known as the JDI Plan.

Under the cash balance design of the SCJ and JDI Plans, a hypothetical or "notional" cash balance account is established for each employee participant. Participants accrue benefits in their notional accounts based on amounts credited annually to those accounts. The Plans credit participants' accounts in two ways: 1) through Annual Service Credits, which are based on a percentage of annual compensation; and 2) through Annual Earnings Credits, which are based on a predetermined formula. The Plans define the Annual Earnings Credit as 4% interest or 75% of the rate of return generated by the Plan's Trust for that year, whichever is greater.

The SCJ and JDI Plan terms allow a participant who ends his employment before normal retirement age to take his pension benefits in a single lump sum, referred to as a "lump sum distribution." Alternatively, the participant may leave his benefits in his notional account and continue to earn Annual Earnings Credits until age 65. A number of the plaintiffs in this case are plan participants who elected to receive a lump sum distribution prior to normal retirement age of 65. The plan terms require that participants receive a pre-retirement lump sum distribution that is the actuarial equivalent of the notional account balance at normal retirement age. However, the Plans made distributions to the plaintiffs equal to the amount in their notional accounts at the time of the distribution, prior to normal retirement age. The

-4-

Plans concluded that lump sum recipients were only entitled to the balance in their notional account by conducting a zero sum calculation. The Plans projected a participant's future interest credits forward to age 65 using the 30-year Treasury rate. The Plans then used the same 30-year Treasury rate to discount the value of the notional account back to the present. Therefore, the interest projection rate and the discount rate cancelled each other out and left participants with accrued benefits equal only to the balance in their notional accounts on the date of distribution. It is this practice that the Plans now acknowledge was an inadequate "whipsaw" calculation that failed to properly account for the value of a participant's account at normal retirement age.

**B. The Plaintiff Classes**

The plaintiffs are current and former participants in the SCJ and JDI Plans. On February 25, 2010, the court certified two plaintiff classes that pertain to the "backloading claim," and four subclasses that pertain to the "lump sum" claim. The court first certified two classes made up of plan participants in each plan who maintained a notional account[3] and became vested in their Plan benefit, labeled the "SCJ Class" and the "JDI Class."

The court also certified four subclasses made up of subsets of the SCJ Class and the JDI Class. These subclasses include plan participants who received a lump

---

[3]The JDI Class only includes those persons for whom the JDI Plan maintained a notional account prior to January 1, 2004, while the SCJ Class includes all persons for whom the SCJ Plan has ever maintained a notional account.

-5-

sum distribution of their benefits prior to normal retirement age of 65. There are two subclasses associated with each Plan, and the subclasses are distinguished based on whether a participant received his or her lump sum distribution prior to a particular date. SCJ Lump Sum Subclass A includes participants in the SCJ Plan who received a lump sum distribution after November 27, 2001, and before August 17, 2006.[4] SCJ Lump Sum Subclass B is made up of participants who received a lump sum distribution prior to November 27, 2001, and after January 1, 1998, the date the plan adopted a cash balance formula. The JDI lump sum subclasses similarly distinguish between lump sum recipients based on the date they received their lump sum payments. The JDI Lump Sum Subclass A contains participants who received a lump sum distribution between March 13, 2002 – the date when a plaintiff with standing first brought suit against the JDI Plan – and August 17, 2006. The JDI Lump Sum Subclass B is made up of participants who received their lump sum distribution before March 13, 2002, and after January 1, 1998.

## C.    Whipsaw Calculation

The plaintiffs allege that the lump sum distributions the subclass members received were not the actuarial equivalent of their normal accrued pension benefits, as required for compliance with ERISA, because the Plans failed to apply a proper

---

[4]The lump sum distributions made after August 17, 2006, are not subject to the requirement that the cash balance pension plan apply a "whipsaw" calculation in order to comply with ERISA, based on the passage of the Pension Protection Act of 2006, Pub. L. No. 109-280, 120 Stat. 780 (2006). *West v. AK Steel Corporation Retirement Accumulation Pension Plan*, 484 F.3d 395, 402 (6th Cir. 2007).

-6-

"whipsaw" calculation in determining the plaintiffs' lump sum payments. "Whipsaw" refers to the two-step calculation to ensure actuarial equivalence between a plan participant's pre-retirement age lump sum distribution and the present value of his normal retirement age benefits. First, a participant's account balance is projected forward to normal retirement age of 65 using the rate at which future interest credits would have accrued if the participant had left his benefits in the notional account until that age. Second, the projected amount is discounted back to present value of those benefits on the date the lump sum is distributed. If a plan applies future interest credits to a participant's notional account at a rate less than the plan's normal interest crediting rate, the participant's lump sum distribution will be less than the actuarial equivalent of the present value of his age 65 account and the participant will suffer a forfeiture of accrued benefits. *See Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 338 F.3d 755 (7th Cir. 2003) (finding that the defendant plan violated ERISA by failing to apply future interest credits to participants' notional account balances at the plan's future interest credits rate and, instead, applying interest credits at a rate exactly equal to the discount rate). This is exactly what the plaintiffs assert happened in the instant case. The plaintiffs allege that the Plans violated ERISA by projecting participants' future interest at the 30-year Treasury rate, rather than projecting future interest at the plan's rate of 4% or 75% of the rate of return on the Trust's assets.

-7-

**ANALYSIS**

The parties both seek entry of summary judgment. Summary judgment is appropriate where the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Material facts" are those facts which "might affect the outcome of the suit," and a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering cross-motions for summary judgment, the court is obliged to view all facts and draw all reasonable inferences in a light most favorable to the party against whom the motion under consideration is made. *Bassiouni v. F.B.I.*, 436 F.3d 712, 721 (7th Cir. 2006).

**I.      Impermissible Backloading Pursuant to ERISA § 204(b)(1)**

Each party asks the court to grant summary judgment in its favor on the plaintiffs' claim that the Plans are unlawfully backloaded in violation of ERISA § 204(b)(1), 29 U.S.C. § 1054(b)(1). Section 204(b)(1) establishes minimum standards for the rate at which pension plan participants earn benefits. These minimum benefit accrual rates prevent employers from backloading benefits (making benefits accrue slowly until an employee nears retirement age) so that an employee's vested pension rights have little value until he or she has completed a lengthy period of service. *Jones v. UOP*, 16 F.3d 141, 143 (7th Cir. 1994). A defined benefit plan can satisfy the minimum benefit accrual requirements by

-8-

Case 2:07-cv-01047-JPS   Filed 03/26/10   Page 8 of 30   Document 203

satisfying the "133 1/3 Percent Rule"[5] embodied in ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B). John F. Buckley IV, *ERISA Law Answer Book* § 11:4 (6th ed. 2008). The "133 1/3 Percent Rule" specifies that a plan satisfies the minimum benefit accrual requirements if the accrued benefit payable at normal retirement age is equal to the normal retirement benefit, and the annual rate at which any individual who is, or could be, a participant can accrue the benefits payable at normal retirement age under the plan for any later plan year is not more than 133 1/3 percent of the annual rate at which that individual can accrue benefits for any plan year. *Id.* (citing ERISA § 204(b)(1)(B); I.R.C. § 411(b)(1)(B)). The purpose behind these requirements is to prevent a plan from being unfairly weighted against shorter-term employees. *Id.*

The plaintiffs allege in their Second Amended Complaint that the Plans are unlawfully backloaded in violation of § 204(b)(1) "[t]o the extent that either Defendant responds to this Complaint by denying that the Annual Earnings Credit is a frontloaded interest credit (in whole or in part)." However, the SCJ and JDI Plans do not deny that the Annual Earnings Credit is frontloaded. On the contrary, the Plans admit in their respective Answers that "The Plans were, and are... 'frontloaded' interest crediting plans within the meaning of IRS Notice 96-8." The Plans previously

---

[5]There are three tests that a defined benefit plan may satisfy to comply with the minimum benefit accrual requirements, one of which is the "133 1/3 Percent Rule." John F. Buckley IV, *ERISA Law Answer Book* § 11:4 (6th ed. 2008). However, the plaintiffs note that the "133 1/3 Percent Rule" is the only test which a cash balance plan, such as the SCJ or JDI Plan, can satisfy, and limit their arguments to the Plans' inability to satisfy this specific test. (*See* Pls.' Mot Summ. J., at 7).

moved to dismiss the § 204(b)(1) claim as moot based on their admission that they are frontloaded interest crediting plans and based on the seemingly conditional nature of the plaintiffs' claim. However, the plaintiffs opposed the motion to dismiss the "backloading" claim, despite the Plans' admissions. The court declined to resolve the matter at that time, due to the cursory treatment of the issue by both parties. Consequently, the parties now move for summary judgment on the "backloading" claim.

On the surface, it appears that the "backloading" claim is moot because the plaintiffs asserted their claim "only to the extent that" the Plans denied their interest credits were frontloaded. However, the plaintiffs now argue that the Annual Earnings Credit is both frontloaded and impermissibly backloaded. The Annual Earnings Credit is defined as the greater of 4% interest or 75% of the rate of return generated by the Plan's Trust for that year. The plaintiffs argue that the Annual Earnings Credit is simultaneously frontloaded and backloaded; it is frontloaded only up to the 4% minimum guaranteed interest, and backloaded as to any future interest credits above that 4% interest floor.

The plaintiffs base their argument on this court's previous decision dismissing their separate claims for violations of ERISA § 204(g) and § 204(h). In determining that the plaintiffs failed to state a claim for violations of § 204(g) and § 204(h), the court found that investment policy changes to the Plans' allocation of trust assets – altering the percentage of assets invested in equities versus fixed income – did not

establish a reduction in a protected, accrued benefit in violation of § 204(g). The plaintiffs suggest the court found that the right to future interest credits on the 75% rate of return on plan assets is not part of a participant's protected, accrued benefit until it is actually credited to the participant's notional account, and that only the 4% minimum portion of the interest crediting formula is an accrued benefit. The plaintiffs make this assertion and then proceed to argue that the Annual Earnings Credit is backloaded as to any trust return rate greater than the 4% floor because it fails the "133 1/3 Percent Rule."

The plaintiffs are impeded by allegations within their own pleadings, however. The plaintiffs allege in their Second Amended Complaint that the Plans are frontloaded interest crediting plans, which the Plans admit in their Answers. The plaintiffs also allege that they accrued the "right to receive future Annual Earnings Credits on their notional account balances through normal retirement age at the same time as they accrued the corresponding pay credits to which the Annual Earnings Credits relate," which the Plans also admit. This statement and admission satisfies the definition of a "frontloaded" plan found in IRS Notice 96-8. Notice 96-8 is an authoritative interpretation of the relevant ERISA statutes and regulations regarding frontloaded cash balance benefit plans and provides guidance on the application of § 204(b)(1) to these plans. *See Berger*, 338 F.3d at 762. The notice provides that an interest credit plan is frontloaded when "the benefits attributable to future interest credits with respect to a hypothetical allocation accrue at the same

-11-

time that the benefits attributable to the hypothetical allocation accrue." I.R.S. Notice 96-8, 1996-1 C.B. 359, Section III A. Thus, the plaintiffs' complaint itself seems to establish the frontloaded nature of the Annual Earnings Credit and cripples the plaintiffs' claim that the credit is partially frontloaded and partially backloaded. *See Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997) (stating that "[i]t is a "well-settled rule that a party is bound by what it states in its pleadings.").

Further, the Annual Earnings Credit formula does not generate impermissible "backloading" because it complies with the "133 1/3 Percent Rule." The ERISA minimum benefit accrual rules seek to prevent the application of different accrual rates pursuant to the length of a plan participant's service with the employer. Application of different accrual rates allows an employer to "backload" a participant's benefits so that they are worth "very little" if the participant leaves the employer many years before reaching retirement age. *See Berger*, 338 F.3d at 762. This tends to "lock an employee into his current employment." *Id.* Requiring a pension plan to satisfy minimum benefit accrual rules, such as the "133 1/3 Percent Rule," seeks to prevent a plan from disadvantaging workers in their early years of employment, when they are most likely to leave the company. *See Register v. PNC Financial Services Group, Inc.*, 477 F.3d 56, 71 (3rd Cir. 2007). The "133 1/3 Percent Rule" keeps plans from backloading benefits by prohibiting a plan from applying a benefit accrual rate that exceeds the accrual rate in any previous year by more than 33%.

29 U.S.C. § 1054(b)(1)(B). The test prevents a plan from applying higher accrual rates as an employee increases his years of service with the company.

The formula employed by the SCJ and JDI Plans does not fail the "133 1/3 Percent Rule" or disadvantage newer employees because the Plans do not tie accrual rates to the length of service of their participants. Instead, the Plans apply the same accrual rate to all employees, regardless of their years of service. Each plan participant accrues pay credits at a rate of 5% of compensation and interest credits at a rate of 4% interest or 75% of the rate of return on trust assets for that year, whichever is greater. The accrual rate remains constant and applies equally to all employees. Thus, the Plans' accrual rate can never exceed itself by 33% and it does not violate the "133 1/3 Percent Rule."

The fact that the Plans' constant accrual rate does not violate the "133 1/3 Percent Rule" becomes clear when it is compared with plans whose accrual rates *do* violate the rule. Treasury Regulation 1.411(b)-1 provides two examples of plan designs which violate the test. 26 C.F.R. § 1.411(b)-1(b)(2)(iii). The first example of a "failing" plan is one in which a participant accrues benefits at a rate of 1% of average compensation for his first 5 years, 1 1/3% for the next 5 years, and 1 7/9% for each subsequent year. Id. at Ex. 2. The plan fails the "133 1/3 Percent Rule" because a participant in his eleventh year of employment accrues benefits at a rate more than 33% higher than his rate of accrual in his first five years (a rate of 1 7/9% versus 1%). The next example of a "failing" plan is one in which a participant

-13-

accrues benefits at a rate of 2% of his average compensation for the first 5 years of participation, 1% for each of the next 5 years, and 1 1/2% for each year thereafter. Id. at Ex. 3. This plan fails the "133 1/3 Percent Rule" because a participant in his eleventh year accrues benefits at a rate more than 33% higher than he earned in years six through ten of employment (a rate of 1 1/2 % versus 1%). These example plans clearly apply differing accrual rates based on length of service. In contrast, the accrual rate formulas employed by the SCJ and JDI Plans for service credits and interest credits do not change over time. Every employee accrues benefits at a rate of 5% of compensation and the greater of 4% interest or 75% of the rate of return on Trust assets, regardless of how many years of employment they complete.

The Plans do not violate the "133 1/3 Percent Rule" because they employ a constant benefit accrual rate. Further, the allegations made by the plaintiffs in their pleading establish that the Annual Earnings Credit employed by the SCJ and JDI Plans is a frontloaded credit. Therefore, the court will grant summary judgment to the Plans on the plaintiffs' "backloading" claim.

## II.    Statute of Limitations Applicable to the "Lump Sum" Claims

The court next turns to the "lump sum" claim asserted by the plaintiffs, which alleges violations of ERISA § 203(e) and § 205(g) based on lump sum distributions less than the present value of the plaintiffs' benefits at age 65, and violations of § 203(a) based on the resulting forfeiture of benefits. However, the court must begin by resolving the questions of which statute of limitations applies to the "lump sum"

-14-

claims and when the limitations period began to run. The answers to these questions are preliminary issues because the SCJ and JDI Plans argue that the "lump sum" claims asserted by all four of the certified subclasses are time-barred. If their contention is correct, the court need not address the claims any further.

The parties present the court with a choice between applying the four-year federal default statute of limitations contained within 28 U.S.C. § 1658(a), or applying the six-year statute of limitations governing breach of contract claims under Wisconsin law. The parties also propose several alternatives regarding the event which triggered accrual of the "lump sum" claims and the running of the statute of limitations. These events include the date when plan participants initially received Summary Plan Descriptions, the date when each plaintiff received his or her "lump sum" distribution of benefits, or a later, unspecified date when the plaintiffs learned that the Plans improperly calculated their lump sum payments.

### A.    Applicable Statute of Limitations Period

The court first considers whether a four-year or six-year limitations period applies to the plaintiffs' claims. The question of an applicable limitations period arises because ERISA does not contain a statute of limitations for non-fiduciary claims, such as those brought by the plaintiffs. *See Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520 n.2 (3d Cir. 2007). In the absence of an ERISA limitations period, the SCJ and JDI Plans assert that the federal default statute of limitations contained in 28 U.S.C. § 1658(a) applies. Section 1658(a) provides a general, four-year

limitations period for any statute enacted after December 1, 1990, that does not contain its own statute of limitations. The statute reads as follows:

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

28 U.S.C. § 1658(a). Though the statute refers to claims arising under laws enacted after 1990, it also applies to claims arising under amendments to pre-existing statutes. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 380-381 (2004). ERISA was enacted in 1974, but the Plans argue that the § 1658(a) statute of limitations applies to the plaintiffs "lump sum" claims because sections 203(e) and 205(g) of ERISA give rise to the claim and were amended after 1990. A claim "arises under" an amendment to a pre-1990 law for purposes of § 1658(a) "if the plaintiff's claim against the defendant is *made possible* by a post-1990 enactment." (emphasis added) *Jones*, 541 U.S. at 382. In other words, the four-year limitations period applies to claims arising under an amended statutory section if the post-1990 amendment "creates a new right to maintain an action." *See id.*

The Plans note that § 203(e) and § 205(g) were amended by the Retirement Protection Act of 1994 (RPA) to change the actuarial assumptions used to calculate the present value of lump-sum distributions. Prior to the 1994 modification, the "applicable interest rate" used to discount a participant's accrued benefit back to present value was defined as the rate used by the Pension Benefit Guaranty Corporation. *Esden v. Bank of Boston*, 229 F.3d 154, 165 (2d Cir. 2000). After the

-16-

RPA amendments, the "applicable interest rate" was defined as the "annual rate of interest on 30-year Treasury securities for the month before the date of distribution or such other time as the Secretary may by regulations prescribe." *Id.* at 165 n.13 (citing Retirement Protection Act of 1994, Pub. L. No. 103-465, § 767(a), 108 Stat 4809, 5038). The Plans argue that this amendment is sufficient to trigger application of § 1658(a) and its four-year statute of limitations period.

However, the plaintiffs' § 203(e) and § 205(g) claims do not "arise under" the RPA simply because the RPA amended those statutes in some manner. The amendments did not "create a new right" for the plaintiffs that did not previously exist. The plaintiffs allege that the Plans failed to properly project their interest credits forward to age 65, which resulted in payments of less than the present value of their accrued benefits. They do not allege that the Plans failed to apply the discount rate required by the RPA. Amending the definition of "applicable interest rate" did not cause the plaintiffs' "lump sum" claims to spring into existence. Therefore, the claims did not "arise under" the post-1990 amendment and the statute of limitations provided by § 1658(a) does not apply.

Instead, the court will apply a six-year statute of limitations. A court must borrow the most analogous state statute of limitations when, as here, Congress did not provide a statute of limitations for the federal claim and § 1658(a) does not apply. *Berger v. AXA Network*, LLC, 459 F.3d 804, 808 (7th Cir. 2006). As the Seventh Circuit has concluded, the most analogous state statute of limitations is Wisconsin's

-17-

six-year period for bringing contract claims under Wisconsin statute § 893.43. *See*
*Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 873 (7th Cir. 1997).
Therefore, the court finds that a six-year statute of limitations applies to the plaintiffs'
"lump sum" claims.

### B.    Date the "Lump Sum" Claims Accrued

The court must next determine when the six-year statute of limitations period
began to run.  Not surprisingly, the parties disagree about the date on which the
plaintiffs' claims accrued.  The Plans argue that the claims accrued in 1998 or 1999,
when plan participants received Summary Plan Descriptions (SPD) and benefit
guides stating that a lump sum distribution made before age 65 would be based on
the amount in the participant's cash balance notional account at the time of payment.
The Plans conclude that this statement notifies participants that their lump sum
payments do not include projected future interest credits.  The plaintiffs dispute that
their claims accrued upon receiving SPDs and benefit guides in 1998, and deny that
they received notice of an *injury* simply because the SPDs provided notice that lump
sum payments would be equal to a participant's notional account balance.  The fate
of the plaintiffs' entire action hangs on this issue.  The plaintiffs filed their claims
against the SCJ Plan in November 2007, and against the JDI Plan in March 2008.
Therefore, the claims are time-barred under the applicable six-year statute of
limitations if they accrued in 1998 or 1999.

In determining when a claim accrued, the court first identifies the alleged unlawful conduct underlying the claim and determines when the allegedly unlawful act occurred. *Berger*, 459 F.3d at 815. Next, the court determines when the plaintiffs discovered "an injury resulting from this unlawful act." *Id.* (quoting *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1139 (7th Cir. 1992). The parties disagree about what act constitutes the alleged unlawful conduct and when it occurred. The Plans imply that the alleged unlawful conduct is the 1998 adoption of plan terms that allow the Plans to project a participant's interest credits forward and discount them back to the present at the same rate. The plaintiffs, on the other hand, identify the alleged unlawful conduct as the Plans' failure to properly calculate the actuarial equivalent of their accrued benefits at normal retirement age and the underpayment of benefits that resulted. The issue for resolution by the court is whether the illegal conduct occurred when the Plans adopted an improper method of calculating lump sum benefits, or when they applied the method and calculated inadequate payment amounts.

The court finds that the unlawful conduct here is the Plans' calculation and payment of lump sum benefits in an amount less than the present value of the participants' accrued benefits at age 65, which generated an alleged forfeiture of benefits to the plaintiffs. A forfeiture of benefits pursuant to an improper calculation cannot occur until the "lump sum" amount is determined and dispersed to the participant. Therefore, the challenged actions are not the type an employer can

-19-

undertake before a participant has elected and received his lump sum distribution. The plaintiffs do not contest the legality of the plan's terms in the abstract, but rather, they challenge the Plans' specific actions in calculating and distributing inadequate lump sum amounts to the individual plaintiffs.[6] Thus, the unlawful conduct occurred at the time of these actions and not at the time the Plans converted to cash balance plans.

The court must next determine when the plaintiffs discovered their injury. A plaintiff discovers her injury and her claim accrues when the pension plan communicates to her a "clear and unequivocal repudiation of rights." *Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62, 66 (7th Cir. 1996). The court finds that each plaintiff's claim accrued at the time he or she received a lump sum distribution. Upon receipt of this distribution, individual plaintiffs were on notice that

_____

[6]The Plans cite *Bilello v. JPMorgan Chase Retirement Plan*, 607 F. Supp. 2d 586 (S.D.N.Y. 2009), to support their argument that the plaintiffs' claims accrued in 1998. In that case, the district court concluded that the plaintiffs' ERISA claims, which included a "lump sum" claim, challenged the legality of the pension plans themselves instead of challenging the application of the plans. *Bilello*, 607 F. Supp. 2d at 593. As a result, the court granted the defendant's motion to dismiss the plaintiffs' claim that the pension plan failed to require a projection of future interest credits to normal retirement age and to use the projection in its calculation, creating a forfeiture of benefits. *Id.* at 596. The court held that the claim was time-barred because the plaintiffs received notice that the plan would not employ a "whipsaw" calculation more than six years previously, when they received SPD's omitting any reference to a projection of future interest credits in calculating benefits. *Id.*

However, this court disagrees that a "lump sum" claim accrues at the time a plan converts to a cash balance pension plan and adopts related plan amendments, rather than at the time the plan applies an inadequate calculation and distributes the insufficient lump sum payment. A forfeiture of benefits based on the SCJ and JDI Plans' failure to properly project future interest credits to age 65 and then discount to the present could not occur before a given plaintiff had even elected to take his benefits as a lump sum distribution. Prior to receiving such a distribution, the plaintiffs had not yet forfeited any benefits to which they were entitled.

-20-

their lump sum payment did not include a projection of interest credits that exceeded the discount rate of those credits to present value because the plaintiffs received lump sum distributions equal to the amount of their notional account balance, and no more.

The plaintiffs argue that they did not "know" they had been injured at the time they received their lump sum distributions because they did not know what projection rate the Plans applied to Annual Earnings Credits, or that the Plans failed to apply a proper calculation. The plaintiffs suggest that their claims did not accrue until they were informed that the Plans' method of calculating lump sum benefits violated ERISA. However, a plaintiff's claim accrues when he learns of his injury and not when he learns that the injury is actionable. *Central States, Southeast & Southwest Areas Pension Fund v. Navco,* 3 F.3d 167, 171 (7th Cir. 1993). According to the plaintiffs' reasoning, a pension participant could bring his claim 25 years after receiving a lump sum distribution, if he remained ignorant that the Plan employed an incorrect method of calculation. However, the plaintiffs' argument contradicts the "policy of repose" favored by the law, which underlies all statutes of limitations. *See Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618 (2007).

The Plans allegedly injured the plaintiffs by miscalculating and underpaying lump sum benefits. The payments themselves constitute an unequivocal repudiation of the plaintiffs' entitlement to further benefits pursuant to a projection of future interest credits forward to age 65. Thus, an individual plaintiff's claims accrued upon

receipt of his lump sum payment from the SCJ or JDI Plan.  The claim of any SCJ

Plan participant receiving a lump sum distribution more than six years before the

filing of this action, or JDI Plan participant receiving a distribution more than six

years before the filing of the consolidated action, is time-barred.  Consequently, the

lump sum claims of the SCJ Lump Sum Subclass B and JDI Lump Sum Subclass

B members are untimely under the statute of limitations.

## III.    Lump Sum Claims

The court now turns to the merits of the "lump sum" claims.  The plaintiffs

allege that they received lump sum payments at less than the present value of their

accrued benefits because the Plans failed to include the value of future interest

credits to age 65.  The Plans admit that they did not properly calculate the lump sum

distributions because they failed to project the participants' account balance forward

to age 65 at the annual interest crediting rate.  In short, the Plans admit liability on

the "lump sum" claim and acknowledge that the lump sum distributions must be

recalculated.  The only remaining matter is determining the appropriate interest

projection rate to apply to participant accounts in recalculating the correct lump sum

payments.[7]

Neither the case law nor IRS regulations spell out precisely what interest

crediting rate must be applied to the plan participants' notional account balances in

_____

[7]The parties only dispute the interest crediting rate to be used in projecting participant accounts forward to age 65, the first step in the two-part "whipsaw" calculation.  They do not dispute the applicable rate for discounting the interest credits back to present value, the second step in the calculation. (*See* Pls.' Mot. Summ. J., at 15 n.8; Defs.' Mot. Summ. J., at 25 n.11).

this case. The Seventh Circuit states that when, as here, the future interest credits are not fixed, determining present lump-sum equivalent value is merely "estimation." *Berger*, 338 F.3d at 760. The district court in *Berger* determined that the proper method for projecting a plan participant's notional account balance to age 65 was to apply the interest crediting rate in effect on the date of each plaintiff's lump sum distribution. *Berger v. Xerox Corp. Ret. Income Guar. Plan*, 231 F. Supp. 2d 804, 818 (S.D. Ill. 2002). In *Lyons v. Georgia-Pacific Corp. Salaried Employees Retirement Plan,* a class action also alleging ERISA violations based on improper calculations of "lump sum" distributions, the United States District Court for the Northern District of Georgia similarly required the defendant plan to project the plaintiffs' cash balance accounts forward using the interest crediting rate in effect as of the date of the lump sum distributions. 196 F. Supp. 2d 1260, 1265-67. (N.D. Ga. 2002). Though the Seventh Circuit was not directly presented with the question, the court commented in *Berger* that using the current year's interest crediting rate at the time of the participant's lump sum distribution was an appropriate method for projecting future interest credits.[8] *Berger*, 338 F.3d at 760.

These statements provide the only authoritative guidance before the court regarding the appropriate interest crediting rate for the Plans to use in projecting the

---

[8]The court notes that the Seventh Circuit's statements in *Berger* regarding the application of a particular interest crediting rate constitute dicta. *See Berger*, 338 F.3d at 760. ("[Defendant plan], while denying that future interest credits should figure in the plaintiffs' lump-sum entitlements at all, does not make an issue of the method of figuring those credits into the lump sum if they have to be figured in.").

plaintiffs' notional account balances forward to age 65. The plaintiffs argue that the IRS "takes the position" that the best representation of future value of interest crediting rates is the actual current year or prior year's interest rate. They do not cite to any regulations or revenue rulings to support this contention, but rather, the plaintiffs cite to correspondence between IRS agents and counsel for a different pension plan, obtained through discovery in a separate case pending in the Western District of Wisconsin, *Ruppert v. Alliant Energy Plan*, Case No. 08-CV-127-bbc (W.D. Wis. 2008). These communications are neither appropriately before this court, nor are they statements of official agency policy. *See Sidell v. Commissioner of Internal Revenue,* 225 F.3d 103, 111 (1st Cir. 2000) (formal IRS statements of policy are regulations and revenue rulings and statements by individual IRS employees do not bind the agency).

The court agrees that using the interest crediting rate in effect at the time of a plaintiff's lump sum distribution is one appropriate method of projecting a notional account balance forward to age 65 when conducting a "whipsaw" calculation. However, neither party proposes this precise calculation strategy. Instead, the parties each propose their own interest crediting rates. These proposed interest crediting rates differ greatly from one another, though each side insists that its proposal is the most "fair" and "unbiased." The plaintiffs propose that an interest crediting rate of 8.95% be applied to recalculate the distributions of all "lump sum" plaintiffs, regardless of the date on which an individual plaintiff received his

-24-

distribution. They arrive at this interest crediting rate based on a stochastic modeling[9] simulation. In contrast, the Plans propose a projected interest rate of 1.52%. They base this interest rate on a constant "spread," equal to the average historical difference between the interest crediting rate and the required discount rate for the years 1986 to 1997, a twelve-year period predating the conversion to a cash balance plan.

Each side asks the court to endorse its proposed interest crediting rate in order to ensure the lump sum payments made to the plaintiffs are the actuarial equivalent of an age-65 pension. However, the court will not weigh the two proposed interest rates against one another or pull its own interest crediting rate from thin air. Instead, the court will issue an injunction to the Plans and order that they recalculate the lump sum distributions pursuant to the requirements of the law. This method of relief was recently suggested by the Sixth Circuit Court of Appeals. *See Durand v. Hanover Insurance Group, Inc.*, 560 F.3d 436, 442 (6th Cir. 2009) (stating that "adjudication of [the plaintiff's lump sum claim] need not put the district court on a path that ends with the court itself trying to estimate what her future interest credits would have been. Rather, if the district court determines that the Plan's methodology violates ERISA, the court could simply award injunctive relief that requires [the plan], in the first instance, to do what the law requires.").

---

[9]The plaintiffs explain stochastic modeling simulation as a financial modeling technique that projects the future path of economic variables, such as interest rates and equity market returns using random variables, but provide no citation for the proffered definition. (Pls.' Proposed Findings of Fact, ¶ 28).

Therefore, the court will grant summary judgment to the plaintiffs on their "lump sum" claim, but will deny summary judgment to both parties as to their proposed methods of calculating damages. Rather, the court will require that the Plans apply an appropriate interest crediting rate and re-determine the actuarial equivalent of the SCJ Lump Sum Subclass A and JDI Lump Sum Subclass A lump sum distributions and submit the results to plaintiffs' counsel within a period not to exceed 90 days. In the event that the parties are unable to reach an agreement as to a fair, just, and reasonable interest crediting rate, they remain free to resubmit the issue to the court for determination through supplemental filings consisting of proposed findings of fact and conclusions of law, together with a memorandum of law, all of which must be simultaneously filed by plaintiffs and defendants not later than July 11, 2010. No further extensions of the deadline will be granted. The court will enter a final order on damages and prejudgment interest after resolution of this issue.

## IV. Motions to Strike

As a final matter, the Plans filed three motions to strike declarations and exhibits filed by the plaintiffs in support of their motion for summary judgment and their brief in opposition to the cross-motion for summary judgment. The Plans argue that these documents do not comply with summary judgment evidentiary requirements because the challenged statements are not based on personal knowledge, because the challenged exhibits are hearsay or lack foundation, and because the documents were not properly disclosed. Therefore, the Plans conclude,

the court cannot rely upon the challenged documents in deciding a motion for summary judgment.

These declarations and exhibits relate to the issue of an appropriate interest crediting rate to apply when recalculating the plaintiffs' lump sum distributions to achieve actuarial equivalence of their notional account balances at age 65. The plaintiffs filed the challenged documents in support of their argument that the court should order the Plans to apply a particular interest crediting rate. However, the court did not rely upon any of the exhibits or declarations because it did not order the Plans to apply the crediting rate proposed by either party.[10] Therefore, the court will deny the motions to strike as moot as moot.

## CONCLUSION

The "backloading" claims asserted by the plaintiffs fail because the plaintiffs asserted in their pleading that the Annual Earnings Credit is a frontloaded credit and because the Annual Earnings Credit does not violate the "133 1/3 Percent Rule." The plaintiffs prevail, however, on the "lump sum" claims for plaintiffs who received their distributions less than six years prior to the filing of the suit against their respective pension plan. The Plans admit liability on these claims and concede that

_____

[10]The court also notes that the Local Rules for the Eastern District of Wisconsin explicitly state that collateral motions in the summary judgment process, such as the Plans' motions to strike, "are disfavored." Civil L.R. 56(b)(9).

-27-

the lump sum distributions paid to the Lump Sum Subclass A plaintiffs[11] must be recalculated. The court declines to grant summary judgment to either party as to their proposed interest crediting rates for determining the actuarial equivalence of the plaintiffs' accounts at age 65. Instead, the court directs the Plans to recalculate the lump sum distributions in accordance with the requirements of the law.

Accordingly,

**IT IS ORDERED** that the plaintiffs' motion for summary judgment (Docket #125) be and the same is hereby **GRANTED in part and DENIED in part**. The court grants summary judgment to the SCJ Lump Sum Subclass A and JDI Lump Sum Subclass A plaintiffs on their "lump sum" claims that the Plans violated ERISA § 203(e) and § 205(g) by failing to properly calculate lump sum distributions and paying lump sums of less than the present value of their accrued benefits, and violated § 203(a) based on the resulting forfeiture of benefits. However, the court denies summary judgment as to the plaintiffs' proposed interest crediting rate for calculating under payments and denies summary judgment as to the "backloading" claims for violations of ERISA § 204(b)(1).

---

[11]The plaintiffs recently filed a motion asking the court to direct that notice regarding this case be sent to all individuals in the two certified classes and four certified subclasses. However, the court certified the classes under Federal Rule of Civil Procedure 23(b)(2). Therefore, notification is not required and the court will not order it. *See* Fed. R. Civ. P. 23(c)(2)(A); *In re Allstate Insurance Company*, 400 F.3d 505, 506 (7th Cir. 2005) ("A Rule 23(b)(2) class action does not require giving class members notice of the suit and a chance to opt out of it and bring their own, individual suits").

-28-

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket #126) be and the same is hereby **GRANTED in part and DENIED in part**. The court grants the motion for summary judgment as to the "backloading" claims of the SCJ Class and JDI Class. The court also grants summary judgment to the Plans as to the "lump sum" claims of the SCJ Lump Sum Subclass B and JDI Lump Sum Subclass B plaintiffs because their claims are time-barred under the applicable six-year statute of limitations. However, the court denies summary judgment as to the Plans' proposed interest crediting rate.

**IT IS FURTHER ORDERED** that the defendants' motion to exceed page limits (Docket #137) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiffs' motions for leave to file excess pages (Docket #155) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the defendants' motions to strike (Docket ##157, 159, and 178) be and the same are hereby **DENIED**;

**IT IS FURTHER ORDERED** that the defendants' motion for leave to file excess pages (Docket #172) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiffs' motion for an extension of time for filing a reply brief (Docket #182) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the defendants' motion to strike the plaintiffs' reply brief (Docket #186) be and the same is hereby **DENIED**.

-29-

**IT IS FURTHER ORDERED** that the plaintiffs' motion for an order directing notice to the classes regarding the case (Docket #201) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 26th day of March, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge